## PEOPLE v. CONNOR.

1. CRIMINAL LAW — MANSLAUGHTER — PROSECUTING ATTORNEY'S OPENING STATEMENT—RECKLESS DRIVING—RACING—EVIDENCE.

   In prosecution of motorist for manslaughter, prosecutor's opening statement that he would show that another person had been sentenced to jail for racing, when, as a matter of fact, such other person had pleaded guilty to reckless driving, did not result in prejudicial error where there is evidence that defendant and such other person had been racing at the time of the accident in which defendant's car killed a pedestrian.

2. AUTOMOBILES—MANSLAUGHTER—RECKLESS DRIVING—RACING—EVIDENCE.

   In prosecution of motorist for manslaughter, fact that another person had pleaded guilty to reckless driving would not prevent prosecutor from showing that defendant and such other person were actually engaged in a race before the accident in which defendant's car killed a pedestrian and such proof would bear upon the question of defendant's guilt.

3. WITNESSES—RES GESTAE—ATTACK ON CREDIBILITY BY PROSECUTOR.

   In prosecution for manslaughter based upon theory that defendant and another had been racing just before accident in which defendant's car killed a pedestrian, where the other person, whose name was indorsed upon the information as a *res gestae* witness, was called, upon defendant's insistence, and denied that he had been racing, it was proper to ask questions of him about the actual facts in the case, since he was not a witness voluntarily brought forth by the prosecutor; hence claim that prosecutor could not attack the credibility of his own witness is without merit.

4. CRIMINAL LAW—RES GESTAE WITNESSES.

   A witness whose name is indorsed upon an information as a *res gestae* witness must be produced before the jury, upon defendant's insistence.

---

* Continued from Vol. 294.

5. WITNESSES—RES GESTAE—ATTACK ON CREDIBILITY BY PROSECUTOR.

It was proper for the prosecutor to attack the credibility of a *res gestae* witness who had been called at the insistence of defendant and not voluntarily brought forth by the prosecutor.

6. CRIMINAL LAW—COMMENT BY COURT.

In prosecution of motorist for manslaughter, court's comment that defendant ''didn't claim he didn't know'' about the steepness of the hill and curve in the road just before the accident which resulted fatally to a pedestrian *held*, not prejudicial where defendant had previously traveled the same road just before the accident.

7. SAME—JURY'S VIEW OF SCENE OF ACCIDENT—DEFENDANT'S WAIVER OF RIGHT TO ACCOMPANY JURY.

Defendant motorist, charged with manslaughter and at liberty on bail, by his absence, waived his right to accompany the jury at time it viewed the scene of the accident.

8. SAME—PURPOSE OF JURY'S VIEW OF SCENE OF ACCIDENT.

A jury is not to view the scene of an accident in order to augment the evidence introduced on the trial but only to make clear in their own minds the evidence already introduced.

9. SAME—JURY'S VIEW OF SCENE OF ACCIDENT—UNDISPUTED PHYSICAL FACTS.

In prosecution of motorist for manslaughter where an officer pointed out to jury upon its view of the scene of the accident the marks made by defendant across a lawn, jury searched for and found the stump of a tree eight inches in diameter which had been uprooted and broken off by defendant's car and jury also examined fence and house with which car collided, no reversible error or prejudice resulted to defendant where there was no dispute as to any of the physical facts which it is alleged the jury may have taken into consideration.

10. AUTOMOBILES—BREAKING OF TUBE LEADING TO HYDRAULIC BRAKE—QUESTION FOR JURY.

In prosecution of motorist for manslaughter arising from death of pedestrian when hit by defendant's car, whether tube leading to hydraulic brake was broken when defendant sought to apply the brakes and caused loss of control of the car or was broken as a result of the accident was for jury.

11. JURY—STATUTES—PANEL—EXEMPTIONS—PREJUDICE.

The fact that the jury panel in the prosecution of a 26-year old motorist for manslaughter included members more than 70 years of age did not prejudice defendant in his rights to

challenge as the statute directing that only such jurors be chosen for the panel as are not exempt is directory rather than mandatory and while jurors past 70 years of age are exempt the right to claim exemption is a personal privilege of the juror (3 Comp. Laws 1929, § 13723; § 13740, as amended by Act No. 173, Pub. Acts 1937).

12. CRIMINAL LAW—MANSLAUGHTER—INSTRUCTIONS.

In prosecution of motorist for manslaughter arising from death of pedestrian, instructions when reviewed in their entirety *held,* not confusing and to have stated properly the elements of the law constituting manslaughter.

13. AUTOMOBILES—MANSLAUGHTER—EVIDENCE — SPEED — INTOXICATING LIQUORS.

Verdict of guilty in prosecution of 26-year old motorist for manslaughter arising from death of a pedestrian when hit by defendant's car *held,* sustained by evidence showing, among other facts, that defendant had been driving at a high rate of speed while he was racing with another car and seemed somewhat intoxicated.

Appeal from Allegan; Miles (Fred T.), J. Submitted June 13, 1940. (Docket No. 95, Calendar No. 41,015.) Decided October 7, 1940.

J. Lyle Connor was convicted of manslaughter. Affirmed.

*I. C. Montague* and *Harry C. Howard,* for appellant.

*Thomas Read,* Attorney General, and *Ervin L. Andrews,* Prosecuting Attorney, for the people.

MCALLISTER, J. While driving an automobile on highway M-118 in the city of Allegan, defendant struck and killed a pedestrian who was walking on the sidewalk. Defendant was arrested, tried for manslaughter, convicted, and sentenced to prison for a term of from 2 to 15 years.

It appears that on the day in question he had stopped at a tavern, where he had drunk some beer, and afterward drove to a nearby airport, where he took an airplane ride with a friend. On his return to Allegan over highway M-118, he lost control of his automobile which proceeded down a hill and over a six-inch curb at a high rate of speed, uprooted and broke off a tree eight inches in diameter, struck and killed the pedestrian on the sidewalk, and continued on through a wire fence, crashing into a large frame house, driving it four inches from its foundation and smashing the supports from the front porch, so that the roof fell onto the car.

On the trial, it was the theory of the prosecution that defendant was racing with a friend, Clare Yeager, who was driving another car; that shortly before the accident he was driving at a rate of between 70 and 90 miles an hour; and that he was intoxicated.

In his opening statement to the jury the prosecuting attorney stated that he would show that defendant was racing with Yeager at the time of the accident and that Yeager was at that time serving a sentence for such racing. Evidence was introduced to show the high rate of speed at which it was alleged defendant was driving, and a witness testified that as Yeager and the defendant went over the top of the hill, they were about even. Yeager was a witness who was indorsed upon the information and was called upon at the insistence of counsel for the defendant. In his examination by the prosecutor, Yeager was asked whether he had not been sentenced to jail for racing. In reply, he denied that he was racing and stated that he had pleaded guilty to reckless driving. It is the claim of the defendant that the prosecutor's opening statement that he

would show Yeager was sentenced to jail for racing, when, as a matter of fact, he had pleaded guilty to reckless driving, resulted in prejudicial error. We are of the opinion that this contention is untenable. There was evidence that both the defendant and Yeager were engaged in racing; and while Yeager may have pleaded guilty to reckless driving, it would not prevent the prosecutor from showing that defendant and Yeager were actually engaged in a race before the accident; and such proof would bear upon the question of defendant's guilt.

The claim that it was improper for the prosecutor to attack the credibility of his own witness is likewise without merit. Yeager insisted that he was not racing, in the face of evidence by the prosecution that such was the case. He was not a witness voluntarily brought forth by the prosecutor. Because his name was indorsed on the information as a *res gestae* witness, it was necessary, upon defendant's insistence, to produce him before the jury; and the questions asked to show the actual facts with regard to the accident were proper. In his charge to the jury, the trial judge was assiduous in instructing them how they should consider Yeager's testimony; and made it explicit that Yeager's conviction had no bearing on the question of defendant's guilt of reckless driving.

Error is further claimed upon the court's comment that defendant "didn't claim he didn't know" about the steepness of the hill and the curve in the road just before the accident. But defendant had previously traveled this same road in going out to the airport just before the accident, and we are unable to see any prejudice in the court's remark.

At the conclusion of the testimony the court permitted the jury to view the scene of the accident,

and it is claimed that prejudicial error resulted because of the fact that the view by the jury was had in the absence of the defendant. It appears, however, that defendant, at the time of the trial, was at liberty on bail. There was nothing to prevent him from being present with the jury at the time of their view. In view of such circumstances, by his absence he must be deemed to have waived his right to accompany the jury, under the authority of *People* v. *Auerbach,* 176 Mich. 23 (Ann. Cas. 1915 B, 557).

Furthermore, it is contended that the jury did more than merely view the scene of the accident; that an officer pointed out to them marks made by defendant's car across a lawn; that the jurors searched for and found the stump of the tree which was uprooted by defendant's car; and that they examined the fence and the house with which the automobile collided. Whatever may have been the result of the jury's having been permitted to view the scene of the accident, there appears no basis for any claim that it resulted in prejudice to defendant. There was no dispute with regard to any of the physical facts which it is alleged the jury may have taken into consideration. It is true that a jury is not to view the scene of an accident in order to augment the evidence introduced on the trial. Such a view is only for the purpose of making clear in their minds the evidence already introduced. However, under the undisputed evidence and the admitted facts of this case, it could not be said that anything the jury saw or did at the scene of the accident resulted in prejudice to the defendant, or in reversible error.

Defendant's only explanation with regard to the accident was that he suffered amnesia as a result of striking his head against the car during the various

collisions. His own testimony was that as he was going down the hill, "something just seemed to go over me like a cloud of dust hit me, or dirt, or something, and the next thing I jerked up like that, and that is all I remember until I was in jail." Defendant's parents testified that when they first saw him a few days after the accident, he did not appear normal, that he seemed dazed, that his conduct was strange; and that "his mind was unbalanced." Physicians testified regarding the cut on defendant's head. All of such evidence was carefully and thoroughly presented before the jury by able counsel, devoted to the interests of the defendant. Defendant could not definitely testify as to his speed nor as to striking the pedestrian, crashing through the fence, or colliding with the house. It was sought to show that he lost control of his car because of the fact that his brakes suddenly failed to operate. Evidence was introduced to show that after the accident, the tube leading to the hydraulic brake of the car was split. With such brakes, the braking force is applied to the wheels by pressure on a foot brake, which in turn results in pressure upon a liquid in the tube which forces the brakes upon the wheels. It was claimed that a lengthwise split in the tube showed that the tube burst as a result of applying the brake; and that when the tube bursts, the liquid escapes, and the driver is left without the use of such brake. It was the theory of the people that the damage to the tube resulted from the collision. The determination of these questions, however, was for the jury.

It is argued that, because the jury panel included members more than 70 years of age, defendant was prejudiced in his rights to challenge. According to 3 Comp. Laws 1929, § 13740, as amended by Act No.

173, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 13740, Stat. Ann. 1940 Cum. Supp. § 27.263), jurors past 70 years of age are exempt from duty; but the right to claim exemption is a personal privilege of the juror. See *People* v. *Rawn,* 90 Mich. 377; and *People* v. *Lange,* 90 Mich. 454. 3 Comp. Laws 1929, § 13723 (Stat. Ann. § 27.246), requiring only such jurors to be chosen for the panel as are not exempt, is directory, rather than mandatory.

Considerable criticism is made of the judge's charge to the jury on the elements constituting manslaughter. The trial court exhibited some anxiety in his efforts to clarify the difference between negligent homicide and manslaughter, and in his instructions called attention to various definitions and illustrated the distinctions by hypothetical instances. It is notable that counsel for defendant, however, did not point out that the court made any erroneous statements with regard to the law in its charge. On a review of the entire charge, we are of the opinion that the jury was not confused and that the instructions properly stated the law.

Upon an examination of the record in this case, we are unable to come to the conclusion that the guilt of the defendant was not clearly proved. The principal charges were undisputed. The pedestrian was killed by defendant. There was evidence that defendant was driving at a high rate of speed and that he was engaged in racing. There was testimony that after the accident there was the smell of liquor on his breath, and that he appeared to be somewhat intoxicated. This evidence was sought to be explained in part by the medical testimony that defendant's conduct and appearance were the result of injuries to his head, received in the accident. But this controverted matter was fairly submitted

to the jury by the trial court, and the determination of fact was for them. They decided it adverse to the claim of defendant. The tenable defense raised with regard to the split in the brake tube as indicating defendant was free from fault, and that the accident occurred without negligence on his part, evidently did not raise a reasonable doubt in the minds of the jury with regard to his guilt.

Defendant is a young man 26 years old, of good family and excellent reputation, and had never been in any trouble before this accident. He was apparently energetic, industrious, a skillful tool dresser, and oil well driller's assistant. Much of the able presentation of defendant's case is concerned with these matters, but in our opinion they are more properly within the realm of consideration by the parole authorities. We cannot say that the verdict was against the great weight of the evidence.

Judgment of conviction affirmed.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.