PEOPLE v HUGHIE LEWIS

PEOPLE v HOWARD

Docket Nos. 78-2959, 43838. Submitted February 6, 1980, at Detroit.—
Decided May 6, 1980. Leave to appeal applied for.

Hughie V. Lewis and Charles E. Howard (hereinafter defendants)
were convicted of first-degree murder in Detroit Recorder's
Court, Joseph A. Gillis, J. Defendants were sentenced to life
imprisonment and solitary confinement at hard labor. During
the trial, the jury viewed the scene of the alleged crime. Since
the defendants were in custody, the trial court refused their
request to accompany the jury to the scene because of "security
problems". Furthermore, relatives of the victim testified that
he was suffering from terminal brain cancer at the time of the
assault and had lost the use of his right side. In addition,
testimony of a police officer indicated that after telling the
defendant, Howard, that the other co-defendants had been
positively identified, defendant Howard responded that he must
have been identified also, since he was with the other defen-
dants all night. Defendants appeal alleging error as to these
matters. *Held:*

1. An accused defendant, in custody, has the right to be
present at every stage of the trial where his substantial rights
may be affected, including a jury view of the scene of the crime.
However, where there is no reasonable possibility of prejudice
because of the denial of the defendant's right to be present at

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 288, 295.
   75 Am Jur 2d, Trial § 79.
[2] 21 Am Jur 2d, Criminal Law § 240.
   Propriety and effect of gagging, shackling, or otherwise physically
   restraining accused during course of state criminal trial. 90
   ALR3d 17.
[3] 29 Am Jur 2d, Evidence § 439.
[4] 5 Am Jur 2d, Appeal and Error §§ 797, 798.
[5] 29 Am Jur 2d, Evidence §§ 555-557.
   Necessity of informing suspect of rights under privilege against self-
   incrimination, prior to police interrogation. 10 ALR3d 1054.

the jury view of the scene of the crime, the Court of Appeals will not reverse on this basis.

2. A defendant's freedom from shackling with handcuffs during his trial is the general rule to insure a fair trial; however, shackling may be permitted to prevent the escape of a prisoner at a jury view of the scene of the crime.

3. The admission or exclusion of evidence, including evidence concerning an infirmity of a crime victim, is within the trial court's discretion, and such a determination should not be reversed unless there was a clear abuse of discretion.

4. Error in the admission or exclusion of evidence is not grounds for setting aside a verdict unless refusal to take such action would be inconsistent with substantial justice.

5. Law enforcement officials are required to warn defendants of their constitutional rights to remain silent and have an attorney present prior to interrogation in a custodial setting; however, where voluntary statements or admissions of a defendant are made in a noncoercive setting there is no requirement to warn.

Affirmed.

1. CRIMINAL LAW — TRIAL — RIGHT OF DEFENDANT TO BE PRESENT.

An accused defendant, in custody, has the right to be present at every stage of the trial where his substantial rights may be affected, including a jury view of the scene of the crime; however, where there is no reasonable possibility of prejudice because of the denial of the defendant's right to be present at the jury view of the scene of the crime, the Court of Appeals will not reverse on this basis.

2. CRIMINAL LAW — SHACKLING DEFENDANT — FAIR TRIAL — PREVENTION OF ESCAPE.

A defendant's freedom from shackling with handcuffs during his trial is the general rule to insure a fair trial; however, shackling may be permitted to prevent the escape of a prisoner at a jury view of the scene of the crime.

3. CRIMINAL LAW — EVIDENCE — INFIRMITY OF VICTIM.

The admission or exclusion of evidence, including evidence concerning an infirmity of a crime victim, is within the trial court's discretion, and such a determination should not be reversed unless there was a clear abuse of discretion.

4. CRIMINAL LAW — EVIDENCE — APPEAL — SETTING ASIDE VERDICT — COURT RULES.

Error in the admission or exclusion of evidence is not grounds for

setting aside a verdict unless refusal to take such action would be inconsistent with substantial justice (GCR 1963, 529.1).

5. CRIMINAL LAW — CONSTITUTIONAL LAW — VOLUNTARY ADMISSIONS.
   Law enforcement officials are required to warn defendants of their constitutional rights to remain silent and have an attorney present prior to an interrogation in a custodial setting; however, where voluntary statements or admissions of a defendant are made in a noncoercive setting there is no requirement to warn.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Rita Chastang* and *Nels L. Olson,* Assistants Prosecuting Attorney, for the people.

*Ronald Weitzman,* for defendant Lewis on appeal.

*Arthur H. Landau,* for defendant Howard on appeal.

Before: N. J. KAUFMAN, P.J., and D. E. HOLBROOK, JR. and R. M. MAHER, JJ.

PER CURIAM. The defendants together with a third codefendant named Bobby Mallory were tried jointly before a Detroit Recorder's Court jury and were convicted of first-degree murder, MCL 750.316; MSA 28.548. Both Lewis and Howard were sentenced to life imprisonment and solitary confinement at hard labor. They now appeal as of right. Codefendant Mallory was convicted and appealed separately.[1]

At the trial, Minnie Cheatham, the mother of the decedent, testified that her son left her home

[1] *People v Mallory* (Docket No. 78-2377, decided November 26, 1979 [unreported]).

on the evening of January 12, 1978, to go to his girlfriend's house. He had $15.40 in his pocket. Robert Parker testified that he looked out of his apartment window and saw the defendant Lewis and another codefendant named Mallory throw the decedent on the hood of a car and beat him. Parker went to telephone the police. When he returned to the window, the decedent was lying on the ground and the two men were jumping up and down on his head. When the police arrived, Parker supplied them with a description of the two men, and described their car as a green Buick with damage to the rear. Mr. Parker could only describe the third man who was the driver of the car as dark-complected. Officer Savinsky testified that he found decedent on the scene. One of his pockets had been ripped out, and he had no money.

Another police officer testified that he observed all three defendants about an hour after the alleged offense at a location approximately two blocks from the scene of the assault. They were standing near a green Buick which was parked at the curb and emitting smoke from the engine or radiator. There was old damage to the rear of the car and fresh damage to the front. The defendant Howard said it was his car, and claimed he had been involved in a hit and run accident. The three men were arrested as suspects in the reported assault. At the time the defendants were booked at the police station, Howard had $4, Lewis had $6 and Mallory had $5, for a total of $15, the same amount the decedent had on his person when he left his mother's house.

The prosecution introduced Mallory's shoes, which had blood of the same type as the decedent's, into evidence. The defendants did not take the stand at trial. Although the notice of alibi

listed six witnesses, none of them were called to testify.

On appeal, defendants raise numerous allegations of error. We find that three of them merit discussion. The first issue raised involves a jury view of the scene of the crime. The alleged crime took place at 10:20 p.m. on a snowy night, and there was objection by defense counsel to a jury view during daylight on a spring day. However, the trial court allowed the jury view in order to establish how visible the crime was from the window of Mr. Parker's apartment. When defense counsel inquired if the defendants could go, the trial court said they could not because of "security problems". Later on in the trial, the following exchange occurred:

"We will see everybody here at 2:00 o'clock and the defendants can't go, but the lawyers can go out [to] the scene if they wish.

"MR. SLAMEKA: For the record, I would like to indicate that my client, Mr. Howard, would like to visit the scene.

"MR. POSNER: On behalf of Mr. Mallory I would like to indicate that also.

"MR. TOWNSEND: I join in that also.

"THE COURT: Well, we have a problem as to whether they are prejudiced if they go to the scene in handcuffs.

"MR. SLAMEKA: I was indicating my point of view. In fact, the Court has indicated on the record in front of the jury that they would take them back to the cell, so they know they are confined.

"THE COURT: We can't take them out, security wise."

Whether to allow the jury to view the scene of the crime is within the trial court's discretion.

MCL 768.28; MSA 28.1051, *People v Dykes*, 37 Mich App 555; 195 NW2d 14 (1972).

An accused has the right to be present at every stage of the trial where his substantial rights may be affected. *People v Medcoff*, 344 Mich 108, 116; 73 NW2d 537 (1955), *People v Ewing*, 48 Mich App 657, 659; 211 NW2d 56 (1973). The right of a defendant to be present at his trial is a fundamental right which is guaranteed by MCL 768.3; MSA 28.1026 as part of the Fourteenth Amendment right to due process. *People v Montgomery*, 64 Mich App 101; 235 NW2d 75 (1975).

In *People v Auerbach*, 176 Mich 23, 47-48; 141 NW 869 (1913), the Supreme Court said:

" 'The court was not in error in permitting or directing a view of the premises by the jury; but we think it was the duty of the court, *in the absence of the respondent*, to have kept the jury while on their way to, and on their return from, and in their view of, the premises, under the supervision of an officer, so that no person might communicate with them or express any opinion, or give any directions in their hearing; *for anything which took place which was in the nature of testimony certainly could not be given to the jury in the absence of the respondent.'*

"We think that the weight of authority is to the effect that a respondent who is at liberty may expressly waive his right to accompany the jury, but that the jury in no case should take anything in the nature of evidence, in his absence. We also think that the respondent had the right to accompany the jury, had he desired to do so in this case. More than this, it is not necessary for us to decide, as the question is not likely to occur upon a new trial in view of what we have said."

In *Auerbach*, the respondent had been free on bail, and had not been prohibited from accompanying

the jury. Therefore, the Court held that he had waived the right to be present at the jury view.

We find no Michigan cases where a conviction was reversed because of the trial court's refusal to allow defendant to accompany the jury to a view of the scene. In *People v Kasem,* 230 Mich 278, 282-283; 203 NW 135 (1925), and *People v Connor,* 295 Mich 1, 5-6; 294 NW 74 (1940), the defendant was free on bail and could have accompanied the jury had he chosen to do so, as was the case in *Auerbach, supra.* In *People v Raider,* 256 Mich 131, 137-138; 239 NW 387 (1931), there was an unresolved factual dispute about whether defendant was present, and defense counsel did not object before the verdict was given. In *People v Gauthier,* 28 Mich App 318, 324; 184 NW2d 488 (1970), and in *People v Dykes, supra,* the defendant was in custody, but made no request to accompany the jury to the scene.

We conclude that the trial court erred in denying the defendants' request to accompany the jury to the scene, based on *People v Auerbach, supra.* Although the trial court expressed concern over the possible prejudicial effect of the jury seeing the defendants in handcuffs at the view, the use of handcuffs has been approved during a jury view in *People v Anderson,* 29 Mich App 578, 582-583; 185 NW2d 624 (1971), *aff'd* 389 Mich 155; 205 NW2d 461 (1973).

We now reach the issue of whether the trial court's erroneous ruling concerning the defendants' presence at the view constitutes reversible error. In *People v Morgan,* 400 Mich 527, 535-536; 255 NW2d 603 (1977), the Court relied on the following language from *Wade v United States,* 142 US App DC 356, 360; 441 F2d 1046, 1050 (1971), in rejecting the automatic reversal rule involving defendant's absence from trial:

"It is possible that defendant's absence made no difference in the result reached. The standard by which to determine whether reversible error occurred [is] * * * whether there is 'any reasonable possibility of prejudice'."

Defense counsel were well aware of the differences in weather and lighting conditions between the jury view and the time of the actual crime, and pointed them out to the jury in closing argument. We, therefore, fail to perceive how defendants' presence at the jury view would have affected the result. On the authority of *Morgan, supra,* we find no "reasonable possibility" of prejudice, and decline to reverse on this basis.

The second issue raised by defendants involves testimony by relatives of the deceased that he was suffering from terminal brain cancer at the time of the assault and had lost the use of his right side. Prior to trial, defense counsel had attempted to suppress this evidence on the basis that it was more prejudicial than probative. The prosecutor argued that it was probative to show malice, since decedent was incapable of defending himself, and it showed why decedent's mother had placed $15 in his left pocket. The trial court ruled that this testimony was admissible. The prosecutor referred to the fact that Cheatham was "dying of a brain tumor" and that he did not have the use of his right arm, during the closing argument.

The admission or exclusion of evidence is within the trial court's discretion. *People v Cancino,* 70 Mich App 90, 96; 245 NW2d 414 (1976), *People v Triplett,* 68 Mich App 531, 536; 243 NW2d 665 (1976). That decision should not be reversed unless there was a clear abuse of discretion. *People v Howard,* 391 Mich 597, 603; 218 NW2d 20 (1974).

According to MRE 402, all relevant evidence is

admissible. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". (MRE 401). Pursuant to MRE 403, even though relevant, evidence may be excluded if its probative value is outweighed by its prejudicial effect.

There is a dearth of case law on introduction of evidence concerning the victim's infirmity. In *People v Neal,* 83 Mich App 102, 106-107; 268 NW2d 303 (1978), the Court said there was no error in admitting evidence that the murder victim was pregnant because it was probative of defendant's motive, where defendant knew that the victim claimed that he was the father of her child.

In the case before us, the victim's physical condition was completely irrelevant to any issue in the case. There was no contention of self-defense or that the decedent was the aggressor. There was eyewitness testimony concerning the brutality of the beating that resulted in Cheatham's death. There was no need to bolster the mother's testimony that decedent's money was in his left pocket by bringing up his illness. We find that the testimony was erroneously admitted, as its only purpose was to appeal to the sympathy of the jury.

The Michigan Court Rules provide that an error in the admission or exclusion of evidence is not grounds for setting aside a verdict unless refusal to take such action would be inconsistent with substantial justice (GCR 1963, 529.1). See also, MCL 769.26; MSA 28.1096. In view of the overwhelming eyewitness evidence against the defendants, we do not find that the erroneous admission of evidence concerning the victim's illness constitutes grounds for reversal.

The final allegation of error involves a statement made by the defendant Howard to a police officer the day after he was arrested. At a *Walker*[2] hearing, the police officer testified to the following events:

"Sergeant, what happened when you allegedly—Mr. Howard allegedly said something to you? What was happening? Explain the circumstances.

"His sister Gloria had come down to Homicide. She stated she wanted to visit with him. I told her we were conducting show-ups in a short while. So she waited around.

"So at approximately 6:30 p.m., I brought him down after the show-ups. And on the way down in the elevator we were having conversation, and I told—

"Were you questioning him?

"No.

"What were you talking about?

"I don't really recall. We were just in the elevator coming down from the 9th floor. I don't recall what was being said.

"You weren't questioning or interrogating?

"No.

"You weren't even writing anything down, were you?

"No.

"What did he say to you?

"We were talking back and forth. And I told him, well, I says, you know, your two friends Lewis and Mallory have both been positively identified. And he stated to me, well, if they have been identified, I was identified because I've been with them all night.

"Did you advise him at one time or another that he had a constitutional right to remain silent?

"At that time I did not.

"When did you or when—

"MR. SLAMEKA: If ever.

"Was he ever advised of his rights?

---

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

"I never advised him of his rights. He was advised by Sgt. McMahon at the 7th Precinct the day before."

Defense counsel objected to the admission of Howard's statement based *inter alia* on the failure to advise the defendant of his *Miranda*[3] rights. The trial court found that the defendant had signed a waiver form on the previous day stating that he had been advised of his *Miranda* rights, and that he had also been advised of his constitutional rights by the arresting officer. Therefore, the trial court ruled that Howard's statement was admissible, and it was introduced at the trial.

This Court reviews the entire record to determine whether the trial court's ruling at the *Walker* hearing was correct. *People v Kyllonen,* 66 Mich App 467; 239 NW2d 410 (1976). However, its ruling will not be overturned unless it is "clearly erroneous". *People v Kelly,* 30 Mich App 154; 186 NW2d 72 (1971), *People v Nard,* 78 Mich App 365; 260 NW2d 98 (1977), *People v Robinson,* 79 Mich App 145; 261 NW2d 544 (1977).

The Supreme Court decision in *Miranda v Arizona, supra,* required law enforcement officials to warn defendants of their constitutional rights to remain silent and have an attorney present prior to an interrogation in a custodial setting. Implicit to this decision was the recognition of the psychological pressures brought to bear on a suspect when questioned in a hostile environment. Specifically excepted from the scope of *Miranda* were voluntary statements or admissions, as follows, 384 US at 478:

"[48, 49] In dealing with statements obtained through interrogation, we do not purport to find all confessions

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk* to the police without the benefit of warnings and counsel, *but whether he can be interrogated.* There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. *Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."* (Emphasis added.)

The Supreme Court defined a "custodial interrogation" as follows, 384 US at 444:

"By custodial interrogation, we mean *questioning initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Emphasis added.)

We conclude that the comment made by Sgt. Dereere did not constitute the type of "custodial interrogation" which was contemplated by *Miranda,* but was a true statement about a recent development in the case which was not designed to elicit a confession or admission from the defendant. Certainly, the brief ride downstairs in the elevator prior to a visit with his relative was not the sort of isolated, coercive setting where an intimidated defendant would feel pressured to divulge information. See *People v Leffew,* 58 Mich App 533; 228 NW2d 449 (1975), *People v Nard, supra.* Thus, we find no error in the admission of Howard's statement into evidence.

We have reviewed the other allegations of error raised by the defendants and find no reversible error.

Affirmed.