PEOPLE v ANDERSON

Docket No. 54484. Submitted June 17, 1981, at Lansing.—Decided
December 7, 1981.

Harold C. Anderson was convicted of assault with intent to
commit murder and kidnapping, Oakland Circuit Court, Farrell
E. Roberts, J. He appeals. *Held:*

1. The record reveals that the defendant was afforded effec-
tive assistance of counsel.

2. The trial court properly denied the defendant's motion to
view the scene of the crime.

3. The record reveals that the trial court's findings of fact
relative to the assault with intent to murder charge were

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d, Criminal Law §§ 752, 984, 985.

Modern status of rules and standards in state courts as to adequacy
of defense counsel's representation of criminal client. 2 ALR4th
27.

Incompetency of counsel chosen by accused as affecting validity of
conviction. 74 ALR2d 1390.

[2] 5 Am Jur 2d, Appeal and Error § 721.

[3] 75 Am Jur 2d, Trial §§ 73, 74.

[4] 4 Am Jur 2d, Appeal and Error § 517.

[5] 21 Am Jur 2d, Criminal Law § 130.

[6] 1 Am Jur 2d, Abduction and Kidnapping § 11.

Seizure or detention for purpose of committing rape, robbery, or
similar offense as constituting separate crime of kidnapping. 43
ALR3d 699.

[7] 5 Am Jur 2d, Appeal and Error § 895.

46 Am Jur 2d, Judges §§ 166, 167.

Disqualification of judge by state, in criminal case, for bias or
prejudice. 68 ALR3d 509.

[8] 21A Am Jur 2d, Criminal Law § 654 *et seq.*

Excludable periods of delay under Speedy Trial Act (18 USCS
§ 3161[h]). 46 ALR Fed 358.

[9] 21 Am Jur 2d, Criminal Law §§ 580, 627, 630.

supported by sufficient evidence. However, the trial court's findings relative to the asportation element of the kidnapping charge were insufficient to support that conviction.

4. The record reveals that the defendant's convictions were not the result of bias or prejudice on the part of the trial court.

5. The defendant was not denied his right to a speedy trial.

6. The record reveals that the trial court may have intended to sentence the defendant to a parolable life term, not possible because of the nature of the crimes involved and the statutory provisions relative to the serving of mandatory minimum sentences. Thus, the defendant's sentence is vacated and the case is remanded for resentencing.

Affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL.

A criminal defendant is not denied effective assistance of counsel where defense counsel performs at least as well as a lawyer of ordinary skill and training in the criminal law; and where the defendant, from hindsight, alleges that certain action by counsel so deprived him of effective assistance and the record reveals that the reasons underlying such action would appear sound to a competent criminal attorney, the assistance of counsel is not constitutionally defective; however, where a defense counsel's performance satisfies the constitutional minimum but the counsel makes a serious mistake, but for which the defendant reasonably might have been acquitted, a new trial is required.

2. CRIMINAL LAW — TRIAL STRATEGY — EFFECTIVE ASSISTANCE OF COUNSEL.

The Court of Appeals is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy, and where the record reveals that a strategy decision was not unreasonable and that a claim of error is based on a difference of opinion even a serious mistake on the part of counsel which would not diminish the defendant's chances for acquittal will not constitute ineffective assistance of counsel because of his following of that strategy.

3. CRIMINAL LAW — CRIME SCENE — JURY VIEW.

A determination in a criminal case whether to grant a request by the defendant to view the scene of the crime is for the trial court, and where cogent reasons for denying such a request are given by the trial court no abuse of discretion will be found (MCL 768.28; MSA 28.1051).

4. Criminal Law — Appeal — Findings of Fact.

The Court of Appeals will set aside findings of fact by a trial court in a criminal case only where they are shown to be clearly erroneous; findings of fact will be said to be clearly erroneous where the reviewing court, upon considering the record as a whole, is left with a definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

5. Criminal Law — Assault With Intent to Murder — Specific Intent.

Specific intent to kill, necessary to support a conviction of assault with intent to commit murder, may be inferred where the natural tendency of the defendant's behavior would be to cause death or great bodily harm.

6. Kidnapping — Asportation.

Asportation, necessary to support a conviction for kidnapping, must not be merely incidental to the commission of a lesser underlying crime, it must be incidental to the kidnapping; the asportation element of kidnapping is not satisfied where the movement of the victim is incidental to the commission of an underlying, coequal offense (MCL 750.349; MSA 28.581).

7. Criminal Law — Judges — Disqualification.

A conviction will not be reversed on the ground that the trial judge should have disqualified himself, *sua sponte,* absent a showing on the record of actual bias or prejudice on the part of the trial judge.

8. Criminal Law — Speedy Trial — Appeal.

A reviewing court, in determining whether a criminal defendant was denied his right to a speedy trial, should consider first the length of any delay; where the delay gives rise to a presumption of prejudice, the court should then consider the reason for the delay, whether the defendant asserted his right to a speedy trial, and any prejudice to the defendant resulting from the delay.

9. Criminal Law — Sentencing — Mandatory Minimum Sentences — Parole.

The people of the State of Michigan, in enacting, by their powers of initiative, the sections of the Michigan Penal Code which provide that a person convicted of certain enumerated criminal offenses and sentenced to a minimum term of years exceeding ten years must serve the entire minimum sentence, undiminished by allowances for good time, special good time, or special parole, intended the law to apply to situations in which a

person is sentenced to life in prison, and, because the Penal Code provides that no minimum term of years may be set where the maximum sentence is life, the minimum sentence in such a situation, for the purpose of applying the provision of the code allowing the diminishing of a sentence by parole, is life, precluding parole consideration for a person so sentenced; thus, where the record reveals on appeal that a trial court may have intended to sentence a criminal defendant to a parolable life term, the sentence should be vacated and the case remanded for resentencing (MCL 791.233, 791.233b; MSA 28.2303, 28.2303[3]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Geoffrey H. Nickol,* Assistant Prosecuting Attorney, for the people.

*John D. Lazar,* for defendant on appeal.

Before: T. M. BURNS, P.J., and D. E. HOLBROOK, JR., and K. B. GLASER,* JJ.

PER CURIAM. Defendant was convicted following a bench trial of assault with intent to commit murder, MCL 750.83; MSA 28.278, and kidnapping, MCL 750.349; MSA 28.581. Thereafter sentenced to two concurrent life imprisonment terms, he appeals as of right.

The trial testimony reveals that Paul Bosler, age 12, was throwing a baseball against a wall when the defendant approached him, picked him up and carred him approximately 40 feet to an area behind the wall. Bosler then began to shout, so the defendant laid him down and began strangling him. While on routine patrol, a policeman observed defendant lying in a grassy field. As the officer approached to investigate, defendant released his hold on the victim's neck. Bosler jumped

---

* Circuit judge, sitting on the Court of Appeals by assignment.

up and ran to the patrolman who immediately arrested defendant. On appeal, defendant raises numerous issues.

Defendant's first claim of error is that he was denied effective assistance of counsel. In *People v Garcia*, 398 Mich 250; 247 NW2d 547 (1976), the Supreme Court set forth a bifurcated test for determining whether a defendant has been deprived of his constitutional right to effective assistance of counsel. The first prong of the test requires that defense counsel perform at least as well as a lawyer of ordinary skill and training in the criminal law. If such action that appears erroneous from hindsight has been taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally deficient. However, even where the overall performance of trial counsel satisfies this constitutional minimum, a defendant also has a right to a fair trial. If an attorney makes a serious mistake, but for which a defendant reasonably might have been acquitted, a new trial is necessary. *Id.,* 266.

With respect to the first branch of inquiry, we find that defense counsel did perform at least as well as a lawyer with ordinary training and skill in the criminal law and did conscientiously protect defendant's interests. He requested a psychiatric evaluation to determine the defendant's competency to stand trial. He filed a motion to dismiss, alleging that the defendant had been denied his constitutional right to a speedy trial. He made various pretrial efforts to get an early trial date. Trial counsel attempted to impeach the testimony of the complainant by reference to statements he had made at the preliminary examination. He filed a motion to dismiss at the conclusion of the prose-

cution's proofs on the basis that the evidence was insufficient to sustain the charge. Defense counsel's overall performance was more than capable.

Defendant's ineffective assistance of counsel argument is also predicated on four specific mistakes allegedly made by his defense counsel. The first claim of improper representation relates to trial counsel's failure to raise an insanity defense. In connection with the determination that defendant was competent to stand trial, the forensic examiner found "no overt signs of past or present mental illness". In addition to diagnosing the defendant as generally "free from major psychiatric illness", the examiner found that defendant recognized how terrifying his approaches are to the victims. Our review of the report persuades us that had an insanity defense been raised it would have had little chance of success. The record does not reflect whether defense counsel considered raising an insanity defense. However, in view of the foregoing, it appears that even if he did fail to consider it the defendant was not denied effective assistance of counsel. If the defense had been raised, it does not appear that defendant would have had a reasonably likely chance of acquittal. *Garcia, supra.*

Defendant relies on three cases where counsel's failure to investigate and consider the possibility of an insanity defense denied the defendant effective assistance of counsel. In each of these cases, the defendant had a documented history of psychiatric problems. In two of the cases, the defendant initially had been found incompetent to stand trial, and defense counsel still did not argue the defense of insanity at trial. In the present case, no history of past or present mental illness was found.

Since the trial counsel requested a psychiatric evaluation to determine the defendant's competency to stand trial, it seems that counsel was aware of the law relating to the insanity defense. Based on this clinical examination, the trial counsel could have concluded that an insanity defense was not the best tactical choice. Based on our reading of the forensic examination and the records of this case, we cannot say that defendant's attorney's decision amounted to ineffective assistance of counsel. See *People v Lotter,* 103 Mich App 386; 302 NW2d 879 (1981).

Defendant next claims that trial counsel erred because he failed to move for a change of venue. He contends that a tremendous amount of pretrial publicity was generated because initially it was believed that the defendant was responsible for several other killings in Oakland County. Defendant alleges that it would have been impossible to impanel an impartial jury in Oakland County and that therefore defense counsel's failure to move for a change of venue constituted a serious mistake which caused him to forego his constitutional right to a trial by jury.

The decision whether or not to move for a change of venue constitutes a matter of trial strategy. It is well-established that this Court is reluctant to substitute its judgment for that of defense counsel in matters of trial strategy. *Lotter, supra.* Considering the amount of pretrial publicity which was generated statewide by the defendant's arrest and the nature of the charges, defense counsel well may have decided that a bench trial was preferable to a jury trial regardless of where it was held. That decision does not appear to have been unreasonable. Even if we found that defense counsel committed a serious error in failing to file

a motion for change of venue, it does not follow that the defendant's chances for acquittal would have been enhanced had the mistake not been made. Such a conclusion would require a finding that a defendant who chooses a jury trial has a greater likelihood of acquittal than one who chooses a bench trial. We can find no evidence supporting that conclusion.

Another assertion is that counsel's failure to move the trial judge to disqualify himself constituted a serious mistake requiring a new trial. We find that trial counsel's decision not to challenge the trial judge is not a serious mistake where it can be shown that the judge is not biased against the defendant. As part of our discussion of defendant's fourth issue, we find no evidence that the trial judge was biased or prejudiced. Hence, counsel's decision not to challenge the trial judge does not render counsel incompetent.

Finally, defendant claims a serious mistake in defense counsel's failure to procure a copy of defendant's preliminary examination transcript. He contends that this failure precluded his attorney from effectively conducting cross-examination of the complaining witness. Although defense counsel did not have a copy of the transcript, it appears that he was intimately familiar with the statements that Bosler had made at that examination. He conducted extensive cross-examination concerning those statements. We cannot see how counsel could have conducted cross-examination more effectively had he obtained a copy of the transcript prior to the trial. In addition, it does not appear that had he obtained a copy of the transcript, defendant reasonably might have been acquitted. Therefore, we find that defendant was afforded effective assistance of counsel and a fair trial.

We find defendant's second claim of error to be without merit. The trial court did not abuse its discretion in denying defendant's motion to view the scene of the crime. Such questions are for the trial judge to decide. MCL 768.28; MSA 28.1051, *People v Hughie Lewis,* 97 Mich App 359; 296 NW2d 22 (1980). Where, as here, a judge finds that photographs in conjunction with a diagram accurately depict the scene of a crime, that there is no dispute concerning the accuracy of the photographs, and that a view would not help decide the facts in this case, an abuse of discretion cannot be said to have occurred. These are cogent reasons for denying the motion. *People v Crown,* 75 Mich App 206; 254 NW2d 843 (1977), *lv den* 402 Mich 803 (1977).

Third, defendant contends that sufficient evidence was not introduced to support his conviction of assault with intent to commit murder and kidnapping. This Court will not set aside the findings of fact by a trial court in a criminal case unless they are shown to be clearly erroneous. GCR 1963, 517.1, *People v Bruce Ramsey,* 89 Mich App 468; 280 NW2d 565 (1979), *lv den* 407 Mich 861 (1979). The findings of fact will not be said to be clearly erroneous unless the reviewing court, after reviewing the whole record, is left with a definite and firm conviction that a mistake has been committed. *People v Starghill,* 99 Mich App 790; 298 NW2d 641 (1980).

The trial court's findings are not clearly erroneous in relation to defendant's claim that insufficient evidence was introduced to support his conviction of assault with intent to commit murder. The trial court found that the defendant had choked Bosler and that had the choking continued Bosler would have died. It further found that the

defendant did not release his grip on Bosler until after he saw the approaching police car. These findings, which defendant does not seriously contest, are in accord with the evidence. However, the defendant contends that even if these findings are accepted as true the evidence was insufficient to permit the trial court to infer an intent to kill. The trial court found that the defendant would have continued to strangle Bosler but for the approach of the police officer. Intent to kill may be inferred where the natural tendency of behavior is to cause death or great bodily harm. *People v Richardson,* 409 Mich 126; 293 NW2d 332 (1980). The natural tendency of defendant's behavior was to cause the death of Bosler. Therefore, the evidence was sufficient to support the trial court's findings that defendant possessed the specific intent to kill.

We do not reach the same result in regard to defendant's conviction on the charge of kidnapping. Defendant maintains that the movement of Bosler was merely incidental to the underlying assault and that therefore the asportation element of kidnapping is lacking. The people argue that movement incident to another coequal offense is sufficient to establish the asportation element and that, even if this was not a coequal offense, the asportation element is satisfied where the movement enhances the danger associated with the underlying offense.

In *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973), the Supreme Court formulated the asportation standard for Michigan's kidnapping statute, MCL 750.349; MSA 28.581. The Court found that the asportation element must not be merely incidental to the commission of a lesser underlying crime, but it must be incidental to the commission of the kidnapping.

As to movement that is incidental to a coequal offense, the Supreme Court has recently expanded the rule established in *Adams.* In *People v Barker,* 411 Mich 291; 307 NW2d 61 (1981), the Court held that the asportation element of kidnapping is *not* satisfied if the movement of the victim is incidental to the commission of an underlying *coequal* offense. The asportation element instituted in *Adams* is crucial, regardless of the length of punishment. In *Adams* and *Barker,* the Court noted that enhanced danger is only a factor to aid the factfinder in determining the asportation element.

In the present case, the trial court found:

"I have looked at several cases in which kidnapping has been discussed in connection with another charge. The kidnapping in this case is combined with another charge with an equally severe penalty. Thus it need not be found that this kidnapping was incidental to a lesser offense. In any event, I find that the asportation of the boy in this case was obviously of the type that placed him in the position of greater danger. The forcible picking up, combined with the forcible confinement of Paul Bosler behind the wall and in the weeds was a willful, malicious act without lawful authority and was a kidnapping. I find the defendant guilty of this beyond a reasonable doubt."

The court made no findings in determining that the movement was incidental to kidnapping. Nor does it appear that the trial court could have so found. The defendant picked up Bosler and carried him a maximum distance of 38 feet. He placed him on the ground and began to choke him. There is no evidence demonstrating that the purpose of the movement was for any other purpose than to commit the assault. In fact, the prosecutor argued during trial that, with respect to the assault charge, the defendant's intent to kill could be

inferred from the fact that he carried Bosler to a more isolated area. If that was defendant's purpose, the act of moving Bosler was clearly incidental to the assault, not incidental to kidnapping.

We recognize that a course of movement incidental to both a kidnapping and the assault could supply the asportation element. *Barker, supra.* However, in this case, the movement had no significance independent of the assault. The trial court's finding of additional danger to the victim is not sufficient to satisfy the asportation element of kidnapping.

Although the *Barker* opinion was not issued until after the trial court's findings had been made, it was made applicable to pending cases where the issue had been preserved. Therefore, we hold that the findings of fact by the trial court relative to asportation are clearly erroneous and reverse defendant's kidnapping conviction.

We find no merit in defendant's fourth claim that the trial judge erred in failing, *sua sponte,* to disqualify himself. Before the prosecutor's opening statement, the trial judge stated that he had "at least an outline of what apparently may have happened" and that therefore an opening statement was unnecessary unless the prosecution wished to make one. This statement does not indicate that the judge was already familiar with the facts. We cannot even infer that the trial court had a preconceived notion regarding defendant's guilt or innocence from his comments. The record does not disclose that the trial judge was in any way biased or prejudiced toward defendant. The record must show actual bias or prejudice before a conviction will be reversed on the ground that the trial judge should have disqualified himself. *People v Elmore,* 92 Mich App 678; 285 NW2d 417 (1979).

Defendant next argues that he was denied his constitutional right to a speedy trial. We conclude that defendant was not denied his right to a speedy trial under the balancing test set forth in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). That test requires consideration of four factors: (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay. .

The first factor is considered a triggering mechanism, whereby inquiry into the other factors in the balancing test is not made unless the delay is such that a presumption of prejudice arises. In *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972), the Michigan Supreme Court held that the presumption of prejudice arises when the delay exceeds 18 months. The slightly less than seven-month delay between defendant's arrest and trial in the present case thus does not trigger our application of the four-factor balancing test.

Even if we continued our inquiry into the other factors, we would conclude, based on an overall balancing of the *Barker* factors, that defendant was not deprived of his right to a speedy trial. The reason for the delay was caused by the forensic center in processing the clinical examination that defendant had requested. The record does not indicate that defendant made a demand for a speedy trial. Lastly, defendant undoubtedly suffered prejudice to his person resulting from the length of his incarceration prior to trial, but the more serious prejudice to his defense was not occasioned by the delay. The combination of these factors does not lead to the conclusion that defendant was denied his constitutional right to a speedy trial.

Defendant's last argument is that he is entitled to resentencing because the trial court mistakenly believed that by sentencing the defendant to a term of life imprisonment defendant would be eligible for parol in ten years. At the sentencing proceeding, the trial court expressly stated that defendant would be eligible for parole consideration after he had served ten years, despite the existence of 1978 PA 81 (Initiative Proposal B, now including MCL 792.233, 791.233b; MSA 28.2303, 28.2303(3). A panel of this Court has recently discussed this issue in *People v Penn,* 102 Mich App 731; 302 NW2d 298 (1981). In sentencing Penn to life imprisonment, the trial court stated that it interpreted the life imprisonment sentence as it had been interpreted prior to the passage of Proposal B. However, the trial court's interpretation was at odds with OAG, 1979, No 5583 (October 16, 1979), which states that Proposal B prohibits an earlier release than the minimum term of the imprisonment. A life sentence was interpreted as being nonparolable with respect to crimes listed in Proposal B. The *Penn* Court held that regardless of the Attorney General's opinion's validity that opinion and not the trial court's interpretation of the law was binding on the Department of Corrections. Therefore, the trial court interpreted the effect of Proposal B erroneously and the defendant was found to be entitled to resentencing.

In the present case, defendant was convicted of a crime listed on Proposal B's list of crimes, which, according to the Attorney General's opinion, are nonparolable where a life sentence is imposed. Since the Attorney General's opinion is still binding upon the Department of Corrections, the trial court erred in its interpretation of law in sentencing the defendant. Because the record indicates

that the trial court may have intended to sentence the defendant to a parolable life term and because the Department of Corrections cannot presently honor that intent, we vacate defendant's sentence and remand for resentencing consistent with the court's intent.

Since we remand this case for resentencing, it is unnecessary for us to decide defendant's other issues related to remanding this case for resentencing.

Affirmed in part; reversed in part. Remanded for proceedings consistent with this opinion. We retain no jurisdiction.