# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID LYLE DYE,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2017

No. 334062
Wayne Circuit Court
LC No. 16-000640-01-FC

---

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529; first-degree home invasion, MCL 750.110a(2); felon in possession of a firearm (felon-in-possession), MCL 750.224f; larceny in a building, MCL 750.360; assault with a dangerous weapon (felonious assault), MCL 750.82; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was originally sentenced, as a third-offense habitual offender, MCL 769.11, to 35 years to life imprisonment for armed robbery, 15 to 40 years' imprisonment for first-degree home invasion, 3½ to 10 years' imprisonment for felon-in-possession, 1½ to 8 years' imprisonment for larceny in a building, 2½ to 8 years' imprisonment for felonious assault, and two years' imprisonment for felony-firearm. Defendant was resentenced to 30 to 55 years' imprisonment for his armed robbery conviction. All of defendant's other sentences remained the same. We affirm.

Defendant's appellate counsel filed a brief on defendant's behalf arguing that the evidence was insufficient to identify defendant beyond a reasonable doubt as one of the perpetrators of these crimes and that defendant's sentence for armed robbery was based on facts not proven to the jury beyond a reasonable doubt, in violation of the Sixth Amendment of the United States Constitution. Defendant filed a Standard 4 brief pursuant to Administrative Order 2004-6, Standard 4, arguing that he was denied the effective assistance of counsel due to various alleged errors made by his defense counsel at trial. We reject all of these arguments.

-1-

## I. SUFFICIENCY OF THE EVIDENCE

Sufficient evidence existed to identify defendant as one of the perpetrators of armed robbery, first-degree home invasion, felon-in-possession,[1] larceny in a building, felonious assault, and felony-firearm.

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). The evidence is reviewed "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). It is the role of the trier of fact to weigh evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

It is well-established that identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "The duty of the prosecutor to identify the accused is an element of his general duty to prove defendant's guilt beyond a reasonable doubt. Certainly proof of defendant's connection with the alleged offense is an indispensable element of that duty." *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). Circumstantial evidence and reasonable inferences arising from the evidence may provide satisfactory proof of the elements of an offense. *People v Johnson*, 146 Mich App 429, 434; 381 NW2d 740 (1985). This includes the identity of the perpetrator. *Kern*, 6 Mich App at 409-410; see also *People v Williams*, 39 Mich App 234, 252; 197 NW2d 918 (1972) (direct testimony and circumstantial evidence were "amply sufficient" to find that the defendant perpetrated an armed robbery).

There was sufficient evidence for a reasonable jury to conclude that defendant was one of the perpetrators of these crimes. Tiffanie Douglas testified that she knew defendant personally as the father of the children of her boyfriend's sister. She saw him on five or six occasions before the incident in question. Douglas saw defendant in the afternoon on July 28, 2015, when he arrived unannounced at her home on Montrose Street in Detroit and asked about the location of "Gee" (a nickname for Douglas's boyfriend, Greg Mack). Defendant returned to Douglas's house at 2:00 a.m. on July 29, 2015, and, again, asked where Gee was. Douglas instantly recognized defendant when he returned. Douglas testified that she saw defendant commit these crimes. Douglas saw defendant, armed with a gun, enter her home halfway[2] through a window in the living room. Douglas saw defendant unplug her television and Xbox and take the Xbox out of the house. She also saw defendant load her television into a vehicle. Douglas never regained possession of these items. In addition, defendant told Douglas to take off her clothes

---

[1] The parties stipulated at trial that defendant was previously convicted of a "specified felony," and that, therefore, he "did not have a right to possess a firearm because he had not met the requirements for redeeming eligibility."

[2] Douglas was ordered to open the door for the perpetrators.

while the unknown man who accompanied him pointed his gun at her. When Douglas went to the police station, she provided Officer Donnell Holyfield with defendant's name.[3]

Defendant argues that Douglas's testimony was inconsistent in that she initially told police that defendant was clean shaven, but after seeing a photograph from a detective in which defendant had a mustache, she said that he had a mustache. However, when reviewing the evidence, conflicts in fact are to be viewed in the light most favorable to the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Further, it is up to the jury to weigh the evidence presented and evaluate the credibility of witnesses. *Kanaan*, 278 Mich App at 619. Douglas testified that she could not stop crying at the police station when she arrived. In her initial report to Officer Holyfield, she told him that defendant was clean shaven. However, Douglas gave the police a written statement on July 29, 2015, at 1:08 p.m., in which she described defendant as having a mustache. It was not until August 1, 2015, that Detective Harold Lewis presented Douglas with the picture of defendant with a mustache. Douglas testified that she gave the written statement that defendant had a mustache before seeing the picture. Thus, defendant's argument mischaracterizes Douglas's testimony. Douglas's testimony demonstrates that she said that defendant had a mustache before she was presented with the picture. We reiterate, at any rate, that conflicts in the evidence are weighed in favor of the prosecution. The evidence in the record was sufficient to justify a rational trier of fact in finding defendant guilty beyond a reasonable doubt of the crimes.

## II. DEFENDANT'S SENTENCE FOR ARMED ROBBERY

Defendant's Sixth Amendment right to a fair trial was not violated when the trial court used judicial fact-finding to score defendant's offense variables (OVs), and the scores for OVs 4, 7, and 19 are supported by a preponderance of the evidence.

This Court reviews a preserved *Lockridge*[4] error to determine whether it is harmless beyond a reasonable doubt. *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015), vacated in part on other grounds ___ Mich ___; 903 NW2d 194 (2017). To do so, this Court determines "what effect, if any, . . . the error [had] on the lower court proceedings[.]" *Id*. at 201. This Court reviews de novo Sixth Amendment challenges to an OV score based on facts that were not admitted by the defendant or proven beyond a reasonable doubt to a jury. *Stokes*, 312 Mich App at 192. With regard to the sentencing guidelines, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

The trial court "must use the sentencing guidelines, as provided by law." MCR 6.425(D). The trial court must consult the sentencing guidelines, calculate the recommended sentencing guidelines sentence range, and take the range into account when determining a defendant's sentence. *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). The trial court

---

[3] We note that the jury was provided with an aiding-and-abetting instruction.

[4] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

-3-

determines the variables by reference to the record, *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008), and may rely on reasonable inferences arising from the record, *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014). In scoring the OVs, the court may consider evidence from the preliminary examination and trial, as well as information in the presentence investigation report (PSIR). *People v McDonald*, 293 Mich App 292, 300; 811 NW2d 507 (2011); *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). OVs 4, 7, and 19 are scored for offenses categorized as a crime against a person, including armed robbery. MCL 777.22(1).

The Michigan Supreme Court in *Lockridge* determined that Michigan's sentencing guidelines scheme violated the Sixth Amendment right to a jury trial because it "required 'judicial fact-finding beyond facts admitted by the defendant or found by the jury to score [OVs] that *mandatorily* increase[d] the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*.' "[5] *Stokes*, 312 Mich App at 193-194, quoting *Lockridge*, 498 Mich at 364 (emphasis supplied by *Lockridge*). Therefore, the Michigan Supreme Court rendered the sentencing guidelines advisory only to remedy the problem. *Lockridge*, 498 Mich at 391. Although the guidelines are no longer mandatory, trial courts still have to score and consider them when sentencing a defendant. *Id*.

Defendant argues on appeal that he was denied his Sixth Amendment right to a trial by jury because his sentence for armed robbery was based on OV scores that were based on judicial fact-finding. As noted above, *Lockridge* does not prohibit sentencing courts from considering facts not proven to a jury beyond a reasonable doubt when scoring OVs. *Id*. Rather, the issue in *Lockridge* was the mandatory nature of the guidelines, which was remedied by making the guidelines advisory in nature. *Id*. Thus, the trial court did not err in scoring OVs 4, 7, and 19 based on facts not admitted by defendant or proven beyond a reasonable doubt to a jury. Moreover, the trial court's assessments of 10 points for OV 4, 50 points for OV 7, and 25 points for OV 19 were supported by a preponderance of the evidence.

## A. OV 4

OV 4 concerns the psychological injury to the victim of a crime. MCL 777.34. OV 4 is scored according to the following guidelines provided in MCL 777.34(1):

(a) Serious psychological injury requiring professional treatment occurred to a victim ...............................................................................................10 points

(b) No serious psychological injury requiring professional treatment occurred to a victim .................................................................................................0 points

Ten points are assessed under MCL 777.34(1)(a) if the serious psychological injury *may* require professional treatment. MCL 777.34(2). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2); see also *People v Lockett*, 295 Mich

---

[5] *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

App 165, 182-183; 814 NW2d 295 (2012). There must be some evidence of a psychological injury on the record to assess points for OV 4. *Id*. at 183. However, if a victim expresses fearfulness or anger, this can constitute sufficient evidence of a psychological injury. See, generally, *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012).

Defendant was assessed 10 points under MCL 777.34(1)(a) for OV 4. "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). In *People v Waclawski*, 286 Mich App 634, 681; 780 NW2d 321 (2009), the underage victim of sexual assault testified that the defendant "had been a friend and a father figure to him and that defendant exploited that relationship to sexually abuse him and that he was 'pretty angry' about what happened to him." The *Waclawski* Court determined that the trial court reasonably found that the victim suffered serious psychological injury, and that the defendant was properly assessed 10 points under OV 4. *Id*. In *People v Schrauben*, 314 Mich App 181, 197-198; 886 NW2d 173 (2016), this Court upheld the trial court's assessment of 10 points for OV 4 based, in part, on a letter from the victim that was discussed in the trial court wherein the victim stated that the past few years had been "a struggle for him psychologically."

Douglas testified at trial that she was afraid that the two men in her home were going to rape or kill her. The PSIR contains the following victim's impact statement from Douglas:

> [Douglas] stated she was not physical injur[ed] as a result of the within offense[s], but suffered emotional trauma, which continues at the present time. Ms. Douglas stated she is apprehensive about being alone in her home at night. She stated she moved out of the residence where the offense[s] occurred the next day and placed her belongings in storage.

Douglas's testimony at trial and her victim's impact statement demonstrate that she was fearful during and after this incident, which is sufficient evidence of a psychological injury that may require professional treatment. *Williams*, 298 Mich App at 124. The victim's impact statement in the PSIR was properly considered by the trial court in assessing 10 points for OV 4. *Johnson*, 298 Mich App at 131. The scoring of OV 4 was properly supported by a preponderance of the evidence.

## B. OV 7

OV 7 addresses aggravated physical abuse. MCL 777.37(1); *Hardy*, 494 Mich at 439. Points are assessed for OV 7 pursuant to MCL 777.37(1):

> (a) A victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ...................................................................50 points

> (b) No victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ...................................................................0 points

The statute defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). Because "torture" is not defined by the statute, this Court has used the dictionary definition: " 'the act of inflicting excruciating pain, as punishment or revenge, as a means of getting a confession or information, or for sheer cruelty.' " *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds by *Hardy*, 494 Mich at 448, quoting *Random House Webster's College Dictionary* (1997). "Excessive brutality" has been determined to mean "savagery or cruelty beyond even the 'usual' brutality of a crime." *Glenn*, 295 Mich App at 533.

Defendant was assessed 50 points for OV 7. This score was supported by a preponderance of the evidence. During the criminal incident, Douglas was guided through her home with a gun pointed at her head. Douglas was then forced to strip naked by defendant and his accomplice. Douglas was faced against the wall, naked, and she "thought something was just terrible about to happen to me [sic]." Defendant's accomplice then ordered her into the bathroom, ordered her to provide the code for her cellular telephone, and threatened to kill her. Defendant's forcing Douglas to take all of her clothes off in the context of this criminal incident demonstrates sadism because it was meant to humiliate Douglas and gratify defendant, as evidenced by his statement, "Since Gee wanna f*** other n******* b****es, then take your clothes off." Also, it is a reasonable inference that having Douglas strip naked was used to increase Douglas's fear and anxiety during the offense. She testified that she feared being raped or killed. We discern no clear error in the scoring.

C. OV 19

OV 19 concerns threats to the security of penal institutions or the court and interference with the administration of justice or the rendering of emergency services. MCL 777.49. OV 19 is scored according to the following guidelines provided in MCL 777.49(1):

> (a) The offender by his or her conduct threatened the security of a penal institution or court ................................................................................25 points
>
> (b) The offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services................................................................................15 points
>
> (c) The offender otherwise interfered with or attempted to interfere with the administration of justice...........................................................................10 points
>
> (d) The offender did not threaten the security of a penal institution or court or interfere with or attempt to interfere with the administration of justice or the rendering of emergency services by force or threat of force .......................0 points

The court may consider the defendant's actions that take place after completion of the sentencing offense when assessing points under OV 19. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). To "interfere with the administration of justice" means "[o]pposing so as to hamper,

hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process . . . ." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013).

The trial transcript indicates that after the jury delivered defendant's guilty verdicts, defendant said, "They set me up, [defense counsel]. They set this up, [defense counsel]. You know this." The transcript then states: "(Affray begins with [defendant] and deputies. Several other deputies enter courtroom. [Defendant] was physically removed from courtroom.)" At sentencing, it was noted that defendant had punched one deputy sheriff in the face, and when another deputy sheriff got involved, defendant attacked them both. Other deputies were called by alarm, and the trial court described the scene as "chaotic[.]" The trial court adjourned defendant's sentencing to a later date so it could properly research whether defendant's attack on courtroom deputies could be considered in scoring OV 19. In upholding a score of 25 points for defendant, the trial court relied on *Smith* for the proposition that conduct that occurs after the sentencing offense is completed can be considered for OV 19. We agree with this. Defendant's attack on multiple courtroom deputy sheriffs was a direct threat to the security of the court under MCL 777.49(1)(a). Although this attack occurred after all of the sentencing offenses occurred, it could still be considered in scoring OV 19. *Smith*, 488 Mich at 200. Therefore, a score of 25 points for OV 19 was supported by a preponderance of the evidence.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant has failed to establish in his Standard 4 brief that he received ineffective assistance of counsel by defense counsel at trial.[6] In his Standard 4 brief, defendant argues that he was denied the effective assistance of counsel because defense counsel (1) did not investigate or present certain alibi or res gestae witnesses, (2) failed to strike a potentially biased juror, and (3) failed to investigate defendant's case, leading to the admission of evidence without authentication or proper foundation.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011) (quotation marks and citation omitted). This Court reviews questions of constitutional law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). If the issue of ineffective assistance of counsel is unpreserved, as it is here, this Court's review is limited to the existing record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

To establish ineffective assistance of counsel, a defendant must show: "(1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. . . . A defendant must also show that the result that did

---

[6] We note that this Court has already denied defendant's motion to remand for a hearing regarding ineffective assistance of counsel. *People v Dye*, unpublished order of the Court of Appeals, entered July 14, 2017 (Docket No. 334062).

occur was fundamentally unfair or unreliable." *Lockett*, 295 Mich App at 187. Effective assistance of counsel is "strongly presumed." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). The defendant has the burden of proof, and may overcome this presumption by showing that counsel failed to perform an essential duty and that this failure was prejudicial to the defendant. *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). The "benefit of hindsight" may not be used to judge counsel's performance. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Defense counsel has wide discretion regarding strategy at trial "because counsel may be required to take calculated risks to win a case." *Heft*, 299 Mich App at 83. This Court will not substitute its judgment for that of trial counsel concerning matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). A defendant must overcome the strong presumption that counsel engaged in sound trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). The fact that a trial strategy fails to work does not mean that its use constitutes ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

"When a defendant alleges ineffective assistance of counsel, he must present a record which factually supports his claim." *People v Armstrong*, 124 Mich App 766, 770; 335 NW2d 687 (1983). When there is no record evidence to support a defendant's claim, this Court generally has no basis to consider the claim. *Id*.

Defendant argues that he was denied the effective assistance of counsel because defense counsel did not interview and/or call as witnesses Ashanti Stewart, Tia Mack (Tia), or April Hicks. Defendant argues that Stewart would have testified that defendant did not have her vehicle[7] on July 28, 2015, Tia would have testified that defendant had their children over the dates in question, and Hicks would have testified that defendant was in Westland on the night in question. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . ." *Horn*, 279 Mich App at 39. Such matters of trial strategy are not second-guessed by this Court. *Id*. The failure to call or question witnesses constitutes ineffective assistance of counsel only when it deprives the defendant of a "substantial defense." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks and citation omitted). "A defense is substantial if it might have made a difference in the outcome of the trial." *People v Hyland*, 212 Mich App 701, 710; 538 NW2d 465 (1995), vacated in part on other grounds 453 Mich 902 (1996).

First, defendant has not factually supported his claims with citations to the lower-court record.[8] *Armstrong*, 124 Mich App at 770. In fact, defendant's grandmother, Fay Carter,

---

[7] The description of the vehicle involved in the incident matched Stewart's vehicle.

[8] Defendant filed in this Court an affidavit from Stewart with his motion to remand. However, Stewart's affidavit was not included in the lower court record and this Court denied the motion to remand, and therefore we will not consider the affidavit. *People v Watkins*, 247 Mich App 14, 31; 634 NW2d 370 (2001), aff'd 468 Mich 233 (2003).

testified that Tia "said she couldn't" be a witness at trial, directly undermining defendant's claim that she would have testified if called by defense counsel. In addition, defendant has failed to demonstrate that defense counsel's failure to call these witnesses deprived defendant of a substantial defense. *Russell*, 297 Mich App at 716. The purported testimony of Stewart, Tia, or Hicks most likely would not have made a difference in the outcome of defendant's trial. *Hyland*, 212 Mich App at 710. Even if Stewart, defendant's girlfriend, had testified that defendant did not have her vehicle that night,[9] this would not outweigh the substantial evidence that placed defendant at the home on Montrose Street on July 28, 2015. Douglas testified that it was defendant who was the perpetrator. We also note that, on the record, defense counsel, in stating that she would not be calling Stewart, clarified for the court that Stewart was not an alibi witness.

In addition, Tia's purported testimony, that defendant had their children over the days in question, does not contradict Douglas's testimony that defendant was one of the men involved in these crimes.[10] Further, the purported testimony of Hicks most likely would not have made a difference in the outcome of defendant's trial. Carter testified that defendant was in her home in Westland on the night of July 28, 2015, to the morning of July 29, 2015. Testimony of Hicks (Carter's daughter) to the same accord would have been cumulative, and the jury still convicted defendant despite Carter's being defendant's alibi.[11] Defendant has not demonstrated that he was denied the effective assistance of counsel in conjunction with the absence of these witnesses.

Defendant argues that defense counsel failed to investigate his case, which led to the errors of failing to call additional witnesses or object to evidence. "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). There is no evidence in the lower court record demonstrating that defense counsel failed to properly investigate defendant's case or an alibi defense. Defense counsel did present an alibi defense by offering the testimony of Carter that defendant was with her during the time that the crimes took place. Defendant claims that defense counsel did not interview Stewart, Tia, or Hicks, but this is not reflected in the lower court record.[12]

---

[9] Defendant also claims that Stewart would have testified that Douglas's television would not have fit in her car, but we note that the affidavit on which defendant relies does not discuss this.

[10] Nor is it outcome-determine that, according to defendant, Tia would have testified that neither Douglas nor her boyfriend informed Tia about the robbery. Defendant also states, "Further Ms. Mack would have testified that she did not provide information to Ms. Douglas to assist the Detroit Police in the identification of defendant." Defendant does not explain the significance of this purported testimony.

[11] In addition, as noted *infra*, defendant has not

[12] We note that Stewart, in fact, was included on defendant's witness list, thereby indicating that defense counsel did at least consider calling her as a witness at some point.

Defendant also argues in his Standard 4 brief that defense counsel provided ineffective assistance of counsel when she failed to strike Juror 3 as a biased juror. During voir dire, Juror 3 answered the trial judge's questions regarding personal bias as follows:

> [*Juror 3*]: So you said he was charged with was it possession of an illegal firearm because he was convicted previously of a firearm?
>
> *The Court*: Well, that's the charge in the case.
>
> [*Juror 3*]: So maybe the fact that he was convicted previously might influence how I feel about his crime now; if he did it, of course.
>
> *The Court*: But would you be able to like listen to the evidence on that charge and see if it's [sic] if the prosecutor has been able to meet their burden of proof on that one?
>
> [*Juror 3*]: Possibly, but I also had --
>
> *The Court*: Because they would have to prove the elements of the crime. Each of the elements have [sic] to be proved beyond a reasonable doubt.
>
> [*Juror 3*]: Possible [sic] I supposed then.

Juror 3 then said that her uncle's home was burglarized five or six years prior, but she would not hold that against the defendant. Significantly, she said, "I wouldn't put an innocent man away." She stated that if the prosecution proved the elements of the crimes, she would follow the law.

Jurors are presumed to be competent and impartial. *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001). Defendant has the burden to establish that a juror was partial or that a juror's impartiality is in reasonable doubt. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). If a potential juror swears that he or she can put aside their preexisting knowledge and opinions, it is initially presumed that the juror is being truthful. *People v Cline*, 276 Mich App 634, 638; 741 NW2d 563 (2007).

A trial attorney's decisions regarding prospective jurors generally are matters of trial strategy that this Court will not review in hindsight. *Johnson*, 245 Mich App at 259. The failure to challenge a potential juror generally does not provide the basis for a claim of ineffective assistance of counsel. *People v Robinson*, 154 Mich App 92, 95; 397 NW2d 229 (1986). This is because the reviewing court does not see the potential jurors or listen to their answers to the voir dire questions, and the "facial expression, or manner of answering a question" may be determinative of a trial attorney's decision to challenge a juror. *Id*. at 94-95. Under the circumstances of this case, defendant's argument that he was denied the effective assistance of counsel when defense counsel failed to dismiss or challenge Juror 3 as a juror is without merit.

At first, Juror 3 expressed concern that the fact that defendant was previously convicted might influence her decision regarding the current charges. However, then Juror 3 adequately asserted that she would be able to be impartial. Defendant has not presented evidence to rebut

Juror 3's assertions that she could be impartial. Therefore, defendant has not established that Juror 3 was partial or that her impartiality was in reasonable doubt. *Miller*, 482 Mich at 550.

Next, defendant argues in his Standard 4 brief that defense counsel provided ineffective assistance of counsel when she failed to object to the admission of a picture of the stolen television for failure of proper authentication pursuant to MRE 901. MRE 901(a) provides that evidence can be authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." A piece of evidence can be authenticated by a witness with knowledge who testifies that "a matter is what it is claimed to be." MRE 901(b)(1). Douglas testified that Exhibit 6 was a picture of her stolen television taken before July 28, 2015. She testified that it was the same television, but her living room was set up differently since the picture was taken. She originally took the picture because she thought it was funny that her brother placed the television on two speakers because they did not have a television stand. Defense counsel did not object to the admission of the photograph. The photograph was properly authenticated pursuant to MRE 901(b)(1) because Douglas testified that the television in the photograph was her television that defendant took from her home on Montrose Street. Thus, any objection defense counsel would have made to the admission of the photograph would have been meritless because it was properly authenticated, and attorneys are not required to assert meritless positions. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defendant was not denied effective assistance of counsel in this regard.[13]

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[13] Defendant claims that there was "no proof" that items were stolen during the incident, but there was indeed proof, by way of Douglas's testimony. Defendant also appears to be arguing that the prosecutor inappropriately stated that defendant made Douglas strip naked, but in making this statement the prosecutor was accurately summarizing Douglas's testimony. Finally, we note that there is no "cumulative error," as argued by defendant, and we decline to revisit this Court's earlier decision to deny defendant's request for remand