PEOPLE v NARD

1. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL—INDI-
   GENCY—COURSE OF PROCEEDINGS—ATTORNEY AND CLIENT—
   RIGHT TO WITHDRAW—PREJUDICE—NOTICE.

   A defendant who becomes indigent during the course of the
   criminal proceedings against him is entitled to appointed coun-
   sel when he becomes financially unable to pay the counsel he
   has retained, but the retained attorney has no unqualified right
   to withdraw of record, and the court in its discretion may
   refuse such withdrawal, where it is so close to the time the case
   is set for trial that the withdrawal must necessarily result in a
   continuance to the prejudice of the other party; a court cannot
   properly grant an attorney leave to withdraw in the absence of
   his client and without the client being given notice and an
   opportunity to be heard.

2. CRIMINAL LAW—INDIGENT DEFENDANTS—ATTORNEY AND CLIENT—
   PUBLIC COMPENSATION—ADEQUATE ARRANGEMENTS.

   Public funds to assure representation of indigent defendants may
   properly be refused to an attorney who takes the case with
   open eyes, knowing at the time that his client was indigent;
   such funds were not intended to be used to "bail out" an
   attorney who fails to make adequate arrangements before
   accepting the representation of a criminal defendant.

3. ATTORNEY AND CLIENT—CRIMINAL LAW—WITHDRAWAL OF COUNSEL
   —INDIGENCY—TIMELY MOTIONS.

   An attorney who waited until after his client's case was set for
   trial to move for withdrawal because of the client's indigency
   did not timely file the motion where his motion effectively

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 318, 319.
[2] 7 Am Jur 2d, Attorneys at Law § 207.
[3] 7 Am Jur 2d, Attorneys at Law §§ 143, 144, 148.
[4] 21 Am Jur 2d, Criminal Law §§ 422–424.
[5] 75 Am Jur 2d, Trial, § 202.
[6] 29 Am Jur 2d, Evidence §§ 784, 785.
[7] 21 Am Jur 2d, Criminal Law § 349 *et seq.*
[8] 21 Am Jur 2d, Criminal Law §§ 485, 486, 505.

removed from the court's consideration the appointment of a different attorney because, under the complexities of the case, the substitute would not have been able adequately to prepare a defense in the time provided.

4. CRIMINAL LAW—VENUE—BURDEN OF PROOF—APPEAL AND ERROR.

A defendant who claims that a trial court improperly refused his motion for change of venue failed to meet his burden of showing undue influence on the jurors or preconceived opinion where the record shows that both sides had ample opportunity to question each and every juror in great detail concerning his or her qualifications, to explore every avenue of prejudice unfettered by the trial court, and where the defense had not exhausted its peremptory challenges.

5. CRIMINAL LAW—JURY—OPENING STATEMENTS—PROSECUTORS—PHYSICAL FACTS—REASONABLE INFERENCES.

A prosecutor in his opening statement to the jury may make a full and fair statement of his case and the facts he intends to prove; he is not limited to merely reciting physical facts, but may properly relate and draw reasonable inferences from that information.

6. CRIMINAL LAW—EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY—DISCRETION OF COURT.

A trial court considering the admission of photographs in a criminal trial must determine whether the pictures are substantially necessary or instructive to show material facts or conditions, or whether they are merely calculated to excite passion and prejudice; the admission of such evidence is in the sound discretion of the trial judge.

7. CONSTITUTIONAL LAW—CRIMINAL LAW—MIRANDA RIGHTS—GENERAL INQUIRY—UNRESPONSIVE STATEMENTS—ADMISSIBILITY.

A general inquiry about a suspect's health and well being which did not substantively concern the offense involved, but which elicited an unresponsive inculpatory reply from the suspect was not within the parameters of the *Miranda* decision, and the response was admissible even though no *Miranda* warnings had preceded it.

8. CONSTITUTIONAL LAW—CRIMINAL LAW—MIRANDA RIGHTS—WAIVER—INTELLECTUALLY IMPAIRED DEFENDANT—OVERBEARANCE.

Waiver of *Miranda* rights by an intellectually impaired defendant was valid where the impairment was not severe, there was no overbearance on the part of the police, the subsequent interrogation was neither long nor intense, there was no evidence of

physical deprivation, and there was no assertion by the defendant that the police in any way elicited the confession through promises or threats.

Appeal from Lapeer, Norman A. Baguley, J. Submitted June 9, 1977, at Lansing. (Docket Nos. 26766, 28474.) Decided September 20, 1977.

Kenneth E. Nard was convicted of two counts of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward B. Meth,* Prosecuting Attorney, (Prosecuting Attorneys Appellate Service, by *Thomas C. Nelson* and *Mark I. Leach,* Assistants Attorney General), for the people.

*Richard P. Banas (Martin F. Palus,* of counsel), for defendant on appeal.

Before: DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

A. E. KEYES, J. Defendant was charged with the murders of two boys, ages 11 and 12. The jury returned guilty verdicts on two counts of second-degree murder. MCLA 750.316; MSA 28.548. Defendant was sentenced to life imprisonment.

His appeal encompasses not only seven assignments of error, but also an interlocutory appeal filed prior to trial, but deferred by order of this Court for disposition subsequent to trial.

The issue raised by interlocutory appeal is addressed to the duty of a trial judge to appoint assigned counsel upon the motion of retained coun-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sel to withdraw upon a showing that the defendant's family had notified such counsel that they were unable to comply with the financial terms of the retained fee agreement.

Based upon defendant's indigency status, the defendant was afforded assigned counsel initially, but attorney Richard P. Banas, subsequent to execution of a written fee agreement with defendant's family which provided for a total fee of from $5,000 to $7,000 in addition to costs, filed his appearance in behalf of defendant and assigned counsel was dismissed. Some 26 days prior to the firmly scheduled trial date, Banas filed a petition alleging breach of the fee contract, indigency on the part of defendant, and moved that either he or other counsel be assigned to represent defendant. Significantly, defendant did not expressly consent to his retained counsel's dismissal. Further, Banas represented to the trial judge that, in the event his fee contract was fully performed by defendant's family, he would not seek recompense from the county. Defendant's motion was denied in part. The request for attorney fees was denied, however, the court ordered that all necessary advances for lay and expert witness fees, costs of transcripts, and investigative costs be paid by the county. The sum of $788.30 was paid pursuant to the trial judge's direction. At the time of the motion, attorney Banas had received $3,455.19 toward the fees and costs of defendant's defense.

An indigent criminal defendant is clearly entitled to an attorney appointed at public expense. MCLA 775.16; MSA 28.1253, *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963).

The crucial question is whether the defendant, at the time of the motion, was in fact indigent.

Defendant was the third party beneficiary of the fee agreement. If fully paid, his counsel apparently would have been satisfied, in view of his representation to the court that he would not seek county funds if the agreement was fully honored.

The Criminal Justice Act, 18 USCA 3006A(c), provides for appointment of counsel upon a finding that a person is financially unable to pay counsel whom he has retained. In *United States v James*, 301 F Supp 107, 141 (WD Tex, 1969), defendants became unable to pay their retained counsel during the course of the proceedings and their retained counsel moved for appointment under the provisions of the above statute. The court denied the motion, however:

"The court finds that while the Criminal Justice Act of 1964 was meant to assure representation of indigent defendants on a basis which would alleviate the burden of individual lawyers, it was not intended to eliminate the burden by paying fees which the defendant might have paid had he not become indigent before or during the proceeding. It cannot be used to pay an attorney who took the case with open eyes, knowing at the time that his client was indigent. Allowing compensation under this act in such circumstances would open the door to indigent defendants choosing the lawyer whom they wanted, from any division or district they chose, and having the attorney appointed after he made his appearance in the case. Nor can the act be used to 'bail out' an attorney who failed to make adequate arrangements before accepting the representation of a criminal defendant. Again, the prime purpose of the act is to protect indigent defendants and not to compensate members of the bar representing indigent defendants."

It is submitted that the same view can be taken of MCLA 775.16; MSA 28.1253, providing for appointment of counsel to represent indigent defendants, under the circumstances of the case at hand. In

*Atilus v United States,* 406 F2d 694, 696 (CA 5, 1969), defense counsel declined to prosecute defendant's appeal until defendant paid his fee, and the time for appeal passed. Although the Court reversed the lower court's refusal to permit defendant to file an appeal after the period had lapsed, the Court stated:

"It is of course perfectly plain that an accused has the right to engage private counsel on such terms as are agreed upon between them. No duty devolves upon the court to appoint counsel when private counsel is thus engaged. Counsel, of course, is entitled to charge for his services, but if, for whatever reason, he permits his services to be used without compensation or security for compensation from his client until a critical stage of the proceedings arrives, he can't be permitted simply to bow out without notice either to court or client and frustrate forever the right of the client to protect his vital interests. That seems to be precisely what happened here."

The following is instructive:

"Even where sufficient cause exists, the attorney has no unqualified right to withdraw of record and the court in its discretion may refuse the withdrawal, particularly where it is sought so close to the time the case is set for trial that it must necessarily result in a continuance to the prejudice of the other party. Moreover, the court cannot properly grant an attorney leave to withdraw in the absence of the client and without his being given notice and an opportunity to be heard * * * " 7 CJS, Attorney and Client, § 110, 944–945.

Since a motion to withdraw is addressed to the court's discretion, and since, like all motions, it may or may not be meritorious, the burden is upon the moving party to prove the legitimacy of the request. *Riley v District Court,* 507 P2d 464,

465 (Colo, 1973). In *People v Murphy,* 35 Cal App 3d 905, 922; 111 Cal Rptr 295, 304 (1973), defendants had retained counsel, but during the course of the trial became unable to pay the agreed fee and moved the court to appoint counsel to represent them. Affirming the trial court's refusal to appoint counsel to defend defendants, the Court said:

"Even assuming that the parties have standing to raise the issue, this motion was simply not timely made. Therefore, the trial court cannot be accused of abuse of discretion. This is far different from a situation where a motion to withdraw counsel is timely made before the case is set for trial and where there is no showing that withdrawal would prejudice the defendant, the prosecution or the smooth course of the administration of justice. *(People v Prince,* 268 Cal App 2d 398, 406, 74 Cal Rptr 197.) Having undertaken the defense of a criminal case, an attorney must continue with his services until he is released by the client or by the court; he may apply to the court for release from further service and for good cause shown may be released, but he may not abandon his representation at will, nor for considerations personal to himself."

It is the opinion of this Court that the defendant was not in fact indigent in view of the fee agreement at the time his attorney sought removal from the case or in the alternative sought recompense from the county.

It is the further opinion of this Court that attorney Banas, by waiting until after the case had been set for trial to move for withdrawal, did not timely file the motion because it removed from the court's consideration the appointment of a different attorney, who, under the complexities of this case, would not have been able adequately to prepare a defense in 26 days. Such appointment would necessarily interfere with the smooth course

of the administration of the court, which had set aside time on its schedule for the trial.

Accordingly, this Court finds no error in the ruling of the trial judge, and his order is affirmed.

Turning now to the assignments of error claimed by defendant as filed subsequent to trial, defendant asserts entitlement to a reversal of his convictions for the reason that while the trial court ruled that a change of venue was necessary from Lapeer County, the situs of the crimes, it abused its discretion when, in fact, it did not change the venue pursuant to a second motion, from Tuscola County.

The trial judge conducted an evidentiary hearing on the motion to change venue and at the conclusion thereof ordered that a change of venue was necessary in view of pretrial publicity and other factors which would preclude the probability of obtaining an impartial jury in Lapeer County where the crime had occurred. He ordered that the trial be held in Tuscola County which borders Lapeer County to the north. Defendant's motion to change venue from Tuscola County was denied. Jury selection commenced on January 6, 1976, and continued for five days. Trial counsel for both sides had ample opportunity to question each and every juror in great detail concerning his or her qualifications to sit on the jury. In more than 900 pages of transcript, counsel had the opportunity to explore every avenue of prejudice virtually unfettered by the trial judge. At the close of the jury selection process, the defense counsel had not exhausted his peremptory challenges.

MCLA 762.7; MSA 28.850 governs change of venue in criminal cases. Grant or denial of the requested change is discretionary. The exercise of that discretion is reviewable, but there must be a

definite, clear showing of abuse of discretion for an appellate court to overturn the action of the trial court. *People v Freeman,* 16 Mich App 63; 167 NW2d 810 (1969), *People v Ranes,* 63 Mich App 498; 234 NW2d 673 (1975).

This Court finds that the trial judge did not abuse his discretion in ordering that the trial should be held in Tuscola County. Defendant failed to meet his burden of showing undue influence or preconceived opinion of the jurors in this case. This claim of appeal is without merit.

Defendant further seeks reversal of his convictions alleging that the prosecuting attorney argued to the jury certain facts which the prosecutor could not and did not prove. These facts concerned sexual acts upon the murdered victims.

In his opening remarks to the jury in this cause, the prosecutor stated:

"The testimony of Dr. Leon Boruch, the pathologist who performed the autopsies on both of these boys, and also assistant medical examiner in Lapeer County will show upon examination on or about the 10th day of May of Mark Mellendorf that the anal ring in the rectum area of Mark Mellendorf revealed what the doctor will testify to, I'm quoting, 'Muscosal tearing of the anterior portion of the anal ring.' And furthermore a portion of the feces of that ring junction revealed a presence of bright red blood.

"The testimony of Dr. Boruch together with the other individuals, police officers who were first to arrive at the crime scene where the bodies of the boys were found will testify that the zipper on the pants of Mark Mellendorf was down."

During the testimony of Dr. Leon Boruch, the following colloque occurred:

"Q. *(By Mr. Meth):* Doctor, within that framework,

what if any findings, or what if any observations did you make around the anal ring of the body identified to you as Mark Mellendorf, without going to any conclusion.

"A. *(Dr. Boruch):* Two mucosal tears, one superior to the other, the first measuring a millimeter in length, the other two millimeters. And there was bright red blood on the feces at that area."

The direct examination of Officer Phillip Thick reveals the following:

"Q. *(By Mr. Meth):* And while present at the scene did you have occasion to make any observation of the pants of the boy in the tree, more specifically in the area of his fly?

"A. *(By Mr. Thick):* Yes I did. The fly was unzipped, and his shoes were also untied."

GCR 1963, 507.1 reads:

"Opening Statements: Before the introduction of any evidence, the attorney for the party who is to commence the evidence shall make a full and fair statement of his case and the facts he intends to prove".

Defendant contends that the prosecutor's allusion to a possible sex act in his opening remarks to the jury was improper and reversible error and that the trial judge should have granted the defendant's motion for a mistrial.

Although testimony elicited from prosecution witness Birr, the crime lab analyst, reveals that there was no seminal fluid present in the fecal material he examined, it would appear that this testimony would be only one fact to be considered in determining if defendant did in fact commit or attempt to commit a sexual act upon the victims

which in effect would form a motive to silence the boys so that they could not divulge what had occurred as claimed by the prosecutor. The prosecutor's theory as expressed in his opening statement did have evidentiary support to a degree where its probative value outweighed its prejudicial effect. A prosecutor is not limited to merely reciting physical facts; he may properly relate and draw reasonable inferences from such information. *People v Wright,* 58 Mich App 735; 228 NW2d 807 (1975), *People v Duke,* 50 Mich App 714; 213 NW2d 769 (1973). Certainly, there might be other rational explanations for the evidence in question, but this does not render the prosecutor's inferences unreasonable, especially in view of the trial court's instructions relating to rules of construction regarding circumstantial evidence.

This assignment of error is properly dismissed.

The defendant claims reversible error for the reason that the trial court permitted the introduction of certain photographic evidence allegedly prejudicial in nature. Seven photographs of the two victims were admitted into evidence. One photograph was refused admission on the grounds of duplication. This evidence depicted the position of the bodies on the scene, the methods used and the wounds inflicted. These images were projected upon a five-foot-square screen during the trial.

The law with regard to the admission of photographs seems well settled. The trial court must determine whether the pictures are "substantially necessary or instructive to show material facts or conditions", or whether they are merely "calculated to excite passion and prejudice". *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973). In a criminal case, the burden is upon the people to prove every element of the crime charged. These

are not nice pictures but they are not any more gruesome than some of the testimony by witnesses. The pictures showed the victims as they were found. The pictures depict the corpus delicti. The admission of such evidence is in the sound discretion of the trial judge. *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972).

These photographs were relevant to the issues of premeditation and deliberation. *People v Fullwood,* 51 Mich App 476; 215 NW2d 594 (1974), *People v Alsteens,* 49 Mich App 467; 212 NW2d 243 (1973). The photographs tended to show that both victims were struck prior to their deaths. They also illustrate the strangulation technique, particularly surrounding the death of Mark Mellendorf, employed by the assailant. See *People v Charles,* 58 Mich App 371, 386; 227 NW2d 348 (1975).

Therefore, the trial judge did not abuse his discretion in either his decision to admit the photographs or in the manner in which they were displayed.

Defendant next contends he is entitled to a reversal of his convictions for the reason that the trial court permitted the introduction of two statements made by defendant.

The first such statement of which defendant complains revolves around a conversation which took place in an automobile when the defendant was being transported from the Flint Police Department detention room to Lapeer County in the presence of two police officers and an assistant prosecuting attorney.

At one point during this twenty minute journey, defendant started to cry or sob and Sergeant Fischhaber, a videotape operator, gave testimony as follows:

"A. *(Sgt. Fischhaber):* I asked him what was the matter.

"Q. Was there any reply?

"A. He said he was scared.

"A. I asked him what he was afraid of.

"Q. And, was there any reply Officer?

"A. Yes, there was.

"Q. And, what was that, if anything?

"A. He said what he done to those two boys.

\*   \*   \*

"Q. Was there any further conversation between you and Kenneth Nard in that vehicle, at that time?

"A. Yes, I tried to calm him down and said—ya know —'We weren't going to hurt you or anything like that'."

At no time prior to this colloquy had the defendant been advised by anyone of his *Miranda* warnings.

Defendant argues custodial interrogation occurred in the police vehicle and that the trial judge should have suppressed the statement of the defendant. A *Walker* hearing was conducted, the trial judge was in a position to hear all the testimony, to make judgments regarding motives based upon the demeanor of the witnesses who testified to the facts and circumstances surrounding the statement, all before deciding that the statement did not constitute custodial interrogation of the defendant. Questions which do not substantively concern the offense charged fall outside the parameters of the *Miranda* decision. *People v Scanlon,* 74 Mich App 186; 253 NW2d 704 (1977).

While this Court reviews the entire record to determine whether the judge's ruling at the *Walker* hearing was correct, *People v Kyllonen,* 66 Mich App 467; 239 NW2d 410 (1976), we do not upset the lower court's ruling unless it is "clearly erroneous". *People v Kelly,* 30 Mich App 154; 186

NW2d 72 (1971), *People v Szczytko,* 40 Mich App 161; 198 NW2d 740 (1972), *affirmed* 390 Mich 278; 212 NW2d 211 (1973).

Resolution of the issue of custodial interrogation without *Miranda* warnings was expressed in *People v Leffew,* 58 Mich App 533, 537; 228 NW2d 449 (1975). This Court stated:

" * * * whether or not said question was initiated by [the officer] or by some other cause."

In *Leffew,* the "other cause" was a prior volunteered statement. The rationale of *Leffew* applies to the instant cause. Here, as in *Leffew,* the police officer did not initiate the conversation. Officer Fischhaber's reaction to defendant's sobbing was entirely natural and spontaneous. It does not appear that a general inquiry into defendant's health and well-being was improper at this juncture. Compare *Dent v State,* 33 Md App 547; 365 A2d 57 (1976).

Defendant's response that he was "scared" evoked the second, equally general, reaction . . . "of what". This unfocused question was clearly suggested by defendant's statement and was a perfectly expectable reflex reply. Under the totality of the circumstances, it does not appear predictable that the officer's inquiry would elicit an unresponsive inculpatory reply on the part of the defendant. See *People v Dorner,* 66 Mich App 298; 238 NW2d 845 (1975).

Accordingly, as to the defendant's statement made to the police officer in the motor vehicle, this Court finds that the trial judge ruled properly in permitting its admission.

Subsequent to this statement being made, the defendant was properly advised of his *Miranda*

warnings following his arrival in Lapeer and he made a videotape confession which the trial court likewise found admissible. This confession contains admissions of the homicides. The entire interview lasted less than 30 minutes. Defendant now asserts that his mental subnormality in conjunction with various other circumstances precluded a knowing and intelligent waiver of rights in this case.

A review of the record clearly indicates that the officer who read defendant his rights used simple, understandable words to which defendant answered responsively and affirmatively. He readily related various biographical data such as his address, age, birthdate, and telephone number. He also conversed cogently and in detail about various facets of the alleged offense.

In those instances where intellectual impairment is not severe and there is not overbearance on the part of the police, there is little reason to doubt the trustworthiness of either the waiver or the admissions. *Lavallis v Estelle,* 370 F Supp 238 (SD Tex, 1974).

In the case at bar, the interrogation was neither of long duration or intensity; there is no assertion that the police in any way elicited the confession through promises or threats, there is no evidence of physical deprivation, but to the contrary, it appears that the defendant slept following his arrest and that from time to time inquiry was made as to his physical needs.

In view of the totality of the circumstances as presented, this Court is of the opinion that the trial judge properly admitted the confession of the defendant as being voluntarily given.

This Court has reviewed and finds no merit in the remaining assignments of error.

Affirmed.