*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

KENNETH EARL NARD,

   Defendant-Appellant.

FOR PUBLICATION
June 02, 2025
9:15 AM

No. 369185
Lapeer Circuit Court
LC No. 1975-001325-FC

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

MURRAY, J.

In 1976 defendant was convicted of two counts of second-degree murder for the brutal killing of two young boys (and rape of one) who were fishing at a local pond. For these crimes the trial court, in exercising the statutory discretion granted to it, sentenced defendant to two terms of life with the possibility of parole. But then, in *People v Stovall*, 510 Mich 301, 322; 987 NW2d 85 (2022), the Michigan Supreme Court held that sentencing juvenile offenders convicted of second-degree murder to serve terms of life, even with the possibility of parole, constituted cruel or unusual punishment. As a result, in December 2023, after a lengthy sentencing hearing, the trial court resentenced defendant to serve concurrent prison terms of 60 to 150 years for each conviction. Though he is now on parole, defendant appeals the sentences.[1] We affirm.

## I. BACKGROUND

The main issue on appeal involves defendant's challenge to the term-of-years sentence imposed by the trial court after a hearing. In order to understand the context for the challenged sentences, knowing the facts underlying the crimes for which he was convicted is critical.

---

[1] Because defendant is still on parole, his challenge to the sentences is not moot. *People v Parker*, 267 Mich App 319, 329; 704 NW2d 734 (2005) ("We note that Parker has served his minimum sentence and was paroled on March 9, 2004. However, we conclude that this appeal is not moot because Parker is scheduled to remain on parole until March 15, 2006, which imposes some continuing limitations on his freedom.").

Defendant's updated presentence investigation report provides the following description of defendant's crimes, which defendant does not dispute:

On [May 9, 1975], the defendant identified as Kenneth Earl Nard, traveled from his home in Flint, Michigan to Tody Lake in Lapeer, to go fishing. The defendant was 17 years old at the time and was in the company of his older brother, Leonard Nard, who was approximately 22 years old and three other adult males. The men were drinking and consuming several beers and vodka during the afternoon. The group arrived at Tody Lake at approximately 3:00 p.m. and started fishing. [Defendant's] fishing equipment was somewhat inferior, as he did not have a fishing pole equipped with a reel. While fishing with his companions, [defendant] observed the victims of the present offense, Mark Jeffrey Mellendorf, age 11 and Scott Allen Hardy, age 12. The defendant left that group he was fishing with and went over and started fishing with the younger boys. He was seen using their fishing equipment. After fishing with the young victims for about a half an hour, [defendant] returned to the group of men he came to the lake with and began fishing. The defendant was alone when he returned but had the fishing equipment belonging to Mark Mellendorf and Scott Hardy.

At approximately 6:30 pm Scott Hardy and Mark Mellendorf were getting ready to leave the area of the lake and go home. They approached [defendant] who was with the group of men, and Mark Mellendorf demanded that [defendant] give back his fishing equipment. The defendant returned the fishing equipment to Mellendorf. The two young victims started to walk away, and [defendant] started walking off toward the boys. He told his male companions he was going to buy himself another fishing pole.

[Defendant,] who weighed approximately 110 pounds, had caught up to the boys and grabbed Mellendorf who weighed approximately 60 pounds and Hardy, who weighed approximately 50 pounds, both by the neck of their shirts. When the defendant grabbed the victims, they were in a secluded area, out of the sight of the other fishermen. [Defendant] was holding both of them by the neck and walked them around the end of the lake. At one point, [defendant] made Mark Mellendorf pull down his trousers and [defendant] tried to force his erect penis into Mellendorf's anus. After the sexual incident, [defendant] took the boys by the neck and walked them down to another secluded area near the lake. [Defendant] forced Mark Mellendorf to help him while he hung Scott Hardy from a low hanging tree branch. The shirt from one of the victims was used for the hanging and it was made of a stretchy material that stretched into a length suitable for hanging a young boy. While Scott Hardy was hanging from a branch choking, [defendant] forced Mark Mellendorf to stand away from the tree. After Hardy hung for a few minutes, [defendant] untied the knot and allowed Scott Hardy to fall to the ground. [Defendant] then made Mark Mellendorf climb up into the tree onto the low hanging branch. [Defendant] forced Mark Mellendorf to tie the stretched shirt around his neck. After he did that, he told the Mellendorf boy to hang himself, but Mellendorf wouldn't let go of the branch. [Defendant] found it necessary to climb up in the tree and strike Mellendorf several times in the face so that he would fall

and be hung. As Mellendorf was strangling, Scott Hardy's body twitched and jerked as it lay on the ground. [Defendant] then went over and kicked the almost dead body several times. [Defendant] then drug Scott Hardy to the lake and held him beneath the water.

After both victims were dead, [defendant] left the scene, leaving Hardy in the water and Mellendorf still hanging in the tree. [Defendant] went back to the place where the sexual act had taken place and picked up the fishing equipment. He then returned to where his companions were fishing. He did not tell anyone what had happened and when the group of men were finished fishing, they returned to their homes in the Flint area.

Defendant's convictions were upheld on appeal. See *People v Nard*, 78 Mich App 365; 260 NW2d 98 (1977). He did not challenge his sentences in that appeal. *Id*.

Forty-six years after defendant began his term of incarceration, and after *Stovall* was decided, defendant moved the trial court for resentencing. After granting the motion, a sentencing hearing was held where numerous relatives of the 11 and 12-year old victims, including the mother of Scott (who was in attendance, but asked someone else to read her statement) and brother of Mark, spoke about the impact the murders had on their families and the community as a whole. They recounted how the murders destroyed both families, how the parents tried (and some continue) to live with the loss day in and day out over the past 48 years, and how family members never had the benefit of seeing both boys grow into adults and live long, fruitful lives. Mark's brother spoke to the court about the impact the crime had on the community, as well as the injustice of what was done, and of the resentencing itself:

As I said, there are not words to express how this affected us and will continue to affect us for the rest of our lives. So now, today, because of six months, we are here today reliving the murders again.

Somehow our justice system believes that after 17 years and six months old, a murderer is entitled to a resentencing; that somehow the six months changes the facts of the case. When did our justice system lose sight of common sense and yes, justice. Justice for innocent victims.

Mark was 11, Scott was 12, both were juveniles too, and their lives were cut short through no fault of their own. They did not antagonize the situation. They weren't doing something that they should have been doing, they were just fishing. They will never have the lives that they ever intended to have. And for them, there are no second chances, no reprieves, no parole.

This six months does not change any of the facts of the murder. Whether he was 17-and-a-half or 18, the murders were just as brutal.

Your Honor, there's nothing you can do here today to fix this. There's nothing you can do to undo what's already been done. You cannot erase all the fear, the pain, the loss that everyone has suffered. You cannot bring back the sense of safety of the community. You cannot bring back Mark and Scott.

The biggest thing that you can do for all of us here today is to make sure that this doesn't happen again. Not again to another young boy or a young girl. To make sure that another family does not have to answer that front door and be told that their son or daughter has been murdered.

For today, we are here not because a convicted murderer has been rehabilitated, that he has completed counseling as cured, or he has found religion as a new man. No, we are here because of six months.

Those six months do not change what he did or who he is. I understand that there are guidelines and limits to what you can do, even though it is not just fair, but this system we are burdened with. I plead with you, please give him the maximum sentence the Court will allow and keep this from happening again.

Defendant then spoke and apologized for killing the two boys and sexually assaulting one of them. After arguments from counsel, the court rendered its decision, highlighting that it had to consider defendant's attributes of youth at the time the crimes were committed, coupled with the other relevant sentencing criteria. In doing so, the court determined that defendant acted knowingly and intentionally, without provocation or through peer-pressure, had familiarity with the consequences of committing criminal acts, and concluded that those criteria outweighed the fact that he was 17 and a half when the crime was committed. As noted, defendant was then sentenced to 60-150 years for each conviction of second-degree murder.

## II. STANDARDS OF REVIEW

Whether a sentence violates the principles of reasonableness under the proportionality test is reviewed for an abuse of discretion. See *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). The same holds true for a trial court's decision to impose attorney fees. See *In re Costs and Attorney Fees*, 250 Mich App 89, 104; 645 NW2d 697 (2002). An abuse of discretion occurs when the trial court's decision deviates from the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). This Court reviews de novo whether a trial court properly applied constitutional standards. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021).

Unpreserved arguments of ineffective assistance of counsel are reviewed for errors apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question whether an attorney provided ineffective assistance, depriving a defendant of the right to counsel, is reviewed de novo. *Id*. at 242.

## III. CRUEL OR UNUSUAL PUNISHMENT

The United States Constitution prohibits "cruel and unusual punishments," US Const, Am VIII, while the Michigan Constitution prohibits "cruel or unusual punishment," Const 1963, art 1, § 16. Because the protection in the Michigan Constitution is broader than that under the Eighth Amendment, if a punishment "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted).

Defendant presents an as-applied challenge to his individualized sentence, which requires us to consider "the particular facts surrounding defendant's conviction and sentence." See *People v Adamowicz (On Second Remand)*, 346 Mich App 213, 232 n 10; 12 NW3d 35 (2023). MCL 750.317 authorizes trial courts to impose upon offenders convicted of second-degree murder "punish[ment] by imprisonment in the state prison for life, or any term of years, in the discretion of the court . . . ." Unlike the norm for first-degree murder, all sentences for second-degree murder convictions are subject to parole. As a result of *Stovall*, the legislative policy choice that one guilty of second-degree murder can receive life with parole, is no longer valid for those under 19.[2] Hence, defendant was entitled to be sentenced to a term-of-years sentence, which the trial court rendered. Defendant now challenges those individualized sentences as also violating the state constitution.

*People v Bullock*, 440 Mich 15, 30, 33-34; 485 NW2d 866 (1992), which involved a constitutional challenge to a statute mandating a penalty of life in prison without the possibility of parole for possession of 650 grams or more of any mixture containing cocaine, set forth criteria to apply in a challenge to a statutory sentence: (1) the severity of the sentence imposed compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed on other offenders in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the penological goal of rehabilitation. Recently a panel of this Court held that the *Bullock* factors applied to a challenge to an individualized, term-of-years sentence. See *People v Eads*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 357332), slip op at 9.[3]

Much of defendant's arguments rest on the assertion that he was given a "de-facto life sentence," or "the functional equivalent of a life without parole sentence," despite being a person who was 17 years old at the time of the crime. See *Eads*, ___ Mich App at ___; slip op at 12 (concluding that a sentence that was in essence a non-paroleable sentence was a "de facto" life sentence). But the opposite is true: under the sentence imposed by the trial court, defendant *was* paroled and he has not been in prison since July 17, 2024. And, assuming he complies with his conditions, defendant will presumably be discharged from parole on July 17, 2026. Therefore, factually, defendant was not actually compelled to spend the rest of his life in prison. We therefore reject as factually unsound the argument that this term-of-years sentence was a "de facto" life

---

[2] See *People v Taylor*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166428 & 166654); slip op at 2 (holding that a life without parole sentence for 19 and 20-year-olds is cruel or unusual punishment).

[3] Judge Murray disagreed, opining that the general proportionality factors, coupled with the factors of youth, provide the governing standard, as recognized in *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). *Eads*, ___ Mich App at ___; slip op at 2 (MURRAY, J., dissenting). *Boykin* looked to *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), which stated that the "basic considerations" to "determin[e] an appropriate sentence" are "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses."

sentence, an assertion which permeates his argument that the sentences were unconstitutional because he had no meaningful opportunity for parole.

## A. HARSHNESS OF PUNISHMENT

Defendant asserts that because MCL 769.25(9) allows, at most, for a sentence of 40 to 60 years for a conviction of first-degree murder committed by a juvenile, his conviction of second-degree murder should not result in a longer sentence. However, under MCL 769.25(9), a court may impose *either* a term-of-years sentence or a sentence of imprisonment for life without parole. Therefore, MCL 769.25(9) authorizes both longer and shorter sentences than defendant's.[4]

In any event, the gravity of defendant's crime can hardly be overstated. *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011) (under *Bullock* "this Court looks to the gravity of the offense and the harshness of the penalty"). The heinous circumstances included killing significantly younger and smaller victims who merely requested that defendant return the fishing pole he took from them. Instead of doing so, defendant forced the 11 and 12-year-old boys to a secluded area, sexually assaulted one and then, apparently to conceal the sexual assault, forced them to another area, made a noose of one of their shirts and hanged one of them from a tree while the other was forced to watch. After hanging the first boy, defendant forced the second boy to hang himself from the tree, overcoming the boy's resistance by striking him until the child's weight was forced onto the noose. Defendant then discovered that the first victim was struggling for his life, and so he drowned him. Defendant then walked away, leaving the bodies behind, returned to his friends, and then to his home, disclosing nothing about the victims until his arrest. The trial court thus did not abuse its discretion in finding that defendant's intentional, brutal, and torturous killing of innocent and essentially helpless children outweighed the severity of this term-of-years sentence.

## B. COMPARATIVE PUNISHMENTS

Another factor is "comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *Brown*, 294 Mich App at 390. Defendant reports that a journal article revealed that after *Stovall* 67 defendants were resentenced, and "the vast majority . . . have been resentenced . . . to terms of years within their guidelines—if applicable—or within the parameters of 40-60 years." He also cites eight of these circuit court cases in which the longest sentence was 37 to 60 years. However, this is an as-applied challenge to defendant's sentence, which is based upon the circumstances of this offender, and these crimes, not what *another* defendant received under *different* circumstances. See *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022) ("Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range. Within that range, the sentence should be tailored to the particular

---

[4] Defendant also emphasizes that his 150-year maximum sentence could result in his incarceration until death should he violate the terms of his parole. Again, this characterization is not entirely apt, given that defendant is currently on parole, and there is no record evidence to suggest that he has been charged with a parole violation. What occurs in the future, of course, is mere speculation and cannot form a basis of our decision.

circumstances of the case and offender."), *Adamowicz*, 346 Mich App at 220, and *People v Abraham*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 364574); slip op at 6-7. This *Bullock* factor requires looking at other states' punishments for the same crime, but prior to *Eads* decisions applying this factor compared sentences statutorily required under Michigan law with those statutorily required in other states, not to individualized sentences. See *Eads*, ___ Mich App at ___; slip op at 2-4 (MURRAY, J., dissenting).

As plaintiff notes, MCL 750.317 authorizes sentences for second-degree murder convictions of life, or any term of years, and that many criminal statutes, including some covering nonhomicide offenses, authorize such open-ended sentencing, e.g., assault with intent to murder, MCL 750.83; armed robbery, MCL 750.529; first-degree criminal sexual conduct, MCL 750.520b; first-degree arson, MCL 750.72; bank robbery, MCL 750.531; carjacking, MCL 750.529a; first-degree child abuse, MCL 750.136b(2), and kidnapping, MCL 750.349. Defendant's sentence was not disproportionate to sentences that the Legislature has authorized for other serious crimes.

Defendant, again incorrectly equating his sentence to one of life, argues that a juvenile offender convicted of first-degree murder could not properly be sentenced to such a lengthy term of years under MCL 769.25.[5] See *Eads*, ___ Mich App at ___; slip op at 9, 11, quoting *Stovall*, 510 Mich at 315 (noting that the defendant was serving, effectively, a life sentence, but that a juvenile convicted of " 'almost certainly the gravest and most serious offense that an individual can commit under the laws of Michigan,' " first-degree murder, would, under MCL 769.25a(4)(c), receive, at most, "a minimum sentence *10 years* higher and a maximum sentence *15 years* higher than those statutory upper limits—for committing a *lesser* offense as a juvenile"). But again, unlike in *Eads*, defendant here has been paroled, and so as a matter of fact the sentence cannot be deemed effectively a life sentence as the Court deemed the sentence in *Eads*. And the *Eads* majority placed great and repeated emphasis on that factor, i.e., that the defendant would likely never gain parole. See *Eads*, ___ Mich App at ___; slip op at 9 (explaining why defendant was "effectively serving a life sentence"); 10-11 ("Eads is now 49 years old and, by virtue of the sentence the court chose to impose, is more likely to die in prison before even reaching parole eligibility for the first time than to actually obtain release in his lifetime"); 11 n 19 (referencing studies on the purported life expectancy of prisoner populations); 12 ("a term of 50 to 75 years' imprisonment for a juvenile offender convicted of second-degree murder does not provide the juvenile 'a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' "), quoting *Stovall*, 510 Mich at 320; 13 ("Given the length of his sentence, we cannot conclude that Eads stands to receive any more meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation than a juvenile sentenced to parolable life"); 14-15 (discussing proportionality).

Regarding the sentences for second-degree murder in other states, plaintiff notes that the federal second-degree murder statute, 18 USC 1111, allows for the same penalty as the Michigan equivalent, and catalogs the possible sentences for second-degree murder, or equivalents, in all

---

[5] As noted, even under MCL 769.25a(2), a juvenile convicted of first-degree murder *can* be sentenced to life without the possibility of parole, a sentence more severe than the one imposed upon defendant.

other states, with half of them allowing sentences of more than 99 years to life, and seven of them including special instructions for sentencing a juvenile. Accordingly, Michigan's sentence for second-degree murder does not appear out of step with the majority of other jurisdictions in this country.

Defendant recites that several statutes from other states allow parole eligibility for juvenile offenders convicted of first-degree murder after serving between 15 and 40 years in prison, or require consideration of the attributes of youth's contribution to the sentencing offense as militating against de facto life sentences. Defendant also cites a journal article as reporting that Michigan is one of only four states where courts have sentenced a juvenile to life without parole more than five times in the last five years.

In *Eads*, ___ Mich App at ___; slip op at 12, quoting *Stovall*, 510 Mich at 318-319, this Court opined that the " 'trend toward treating juveniles less harshly than adults and extending *Miller*[6] beyond just the mandatory LWOP context' likewise supports treating juveniles sentenced to a 50-to-75-year term-of-years sentence for second-degree murder less harshly than similarly situated adults." This Court noted that "none of the jurisdictions referenced in *Stovall* permitted a term-of-years sentence nearly as severe as [the defendant's]." *Eads*, ___ Mich App at ___; slip op at 12, citing *Stovall*, 510 Mich at 319-320. This factor, in light of *Eads*, suggests that defendant's sentence was unduly harsh when compared to second-degree murder sentences for other juvenile offenders.

## C. REHABILITATION

Defendant argues that because he effectively has a life sentence, the sentence fails to address his rehabilitative potential, despite his having largely conformed his behavior to expectations while incarcerated from a young age. The "goal that forms the basis of parole systems" is rehabilitation. *Graham v Florida*, 560 US 48, 73; 130 S Ct 2011; 176 L Ed 2d 825 (2010). Again, however, because defendant was paroled, unlike the defendant in *Eads*, his argument lacks any persuasive value.

## IV. FACTORS OF YOUTH

According to defendant, the trial court erred by not adequately considering the mitigating factors of youth. But the record shows to the contrary, as the trial court repeatedly noted defendant's age, and balanced that factor with the remaining sentencing factors, as it was required to do.[7]

---

[6] *Miller v Alabama*, 567 US 460, 470-473; 132 S Ct 2455; 183 L Ed 2d 407 (2012) (holding that "mandatory life-without-parole sentences for juveniles" constitutes cruel and unusual punishment).

[7] To the extent the court relied on a local sentencing policy it erred, as a sentence that conforms to a local sentencing policy rather than an individualized sentence is invalid. *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997); *People v Pointer-Bey*, 321 Mich App 609, 620; 909 NW2d

In *Miller v Alabama*, 567 US 460, 470-473; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the Court concluded that "mandatory life-without-parole sentences for juveniles" constitute cruel and unusual punishment in violation of the Eighth Amendment. The Court reasoned that *mandatory* life sentences for juveniles prevented sentencing courts from considering whether life was a proportional sentence for a juvenile, because such laws "remov[e] youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult[.]" *Id*. at 474. The Court summarized the considerations that may distinguish sentencing a juvenile from sentencing an adult:

> Mandatory life without parole for a juvenile precludes consideration of his chrono-logical age and its *hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.* It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. *It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.* Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—*for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.* And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it. [*Id*. at 477-478 (citations omitted; emphasis added).]

See also *People v Taylor*, 510 Mich 112, 126; 987 NW2d 132 (2022).

Defendant asserts that the court emphasized the heinous nature of defendant's crimes to the exclusion of considering any mitigating aspects of his youth. We do not agree. For one thing, the circumstances of the crime remain a primary consideration in determining a proportionate sentence, given that the reasonableness of a sentence is determined by evaluating whether that sentence violated the principle of proportionality, which requires " 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017), quoting *Milbourn*, 435 Mich at 636. Accord *People v McFarlin*, 389 Mich 557, 574; 208 NW2d 504 (1973) ("[T]he sentence should be tailored to the particular circumstances of the case and the offender . . . ."). Consideration of the circumstances of the crime continues to be part of the well-established criteria for determining a constitutionally proportionate sentence. The factors of youth do not detract or preclude that consideration, they simply add to that consideration. See *Miller*, 567 US at 477 (a mandatory sentence "neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him");

---

523 (2017). But in context we conclude that the court was likely not suggesting that a local policy guided the sentence, but that the values held by trial judges factor into balancing the appropriate factors, which they clearly do.

*Boykin*, 510 Mich at 188-189. And, in fact, the record shows that both sentencing factors were considered by the court.

Despite denying defendant's request to formally discuss the *Miller* factors, *Boykin*, 510 Mich at 190 (reasoning "[t]he requirement to consider youth at sentencing is not necessarily the same as a requirement to articulate the *Miller* factors on the record during a sentencing hearing"), the trial court stated that it would not sentence defendant "without first analyzing whether the fact that the Defendant was a juvenile at the time of the criminal acts should be deemed to have a bearing on the particular sentence imposed." There is no requirement that a trial court reduce its sentence out of consideration for a defendant's youth. Instead, recent caselaw requires only that the attributes of youth be taken into consideration. *Id*. at 193 ("[T]he mitigating qualities of youth within *Snow's* sentencing criteria stops short of requiring trial courts to articulate a basis on the record to explain how youth affected the sentence imposed."). "[T]here is no authority that imposes a higher standard of articulation regarding youth beyond our general requirement that a trial court must adequately explain its sentence on the record in order to facilitate appellate review." *Id.* at 194.

Defendant argues that the trial court should have mitigated his sentence out of consideration for his youthful age, home environment, unfamiliarity with the legal system, and rehabilitation prospects. However, the trial court, while not employing the precise language of the *Miller* factors, addressed many of them, and concluded that defendant's criminal conduct did not exhibit immaturity, that he acted alone and was not subjected to peer-pressure or other third party compulsion, and that his prior behavior demonstrated familiarity with the justice system, which had failed to rehabilitate him. The trial court acknowledged that defendant was a juvenile, which could have influenced his behavior, but ultimately concluded that defendant's actions indicated that his crimes were not attributable to immaturity. In fact, as the trial court found, the evidence showed the exact opposite:

> Certainly the mitigating characteristics of youth must be considered.
>
> However, applying those characteristics in this case fails to provide a material basis for providing relief from the sentence imposed.
>
> The specific facts revealed that the Defendant was entirely cognizant that his actions in terminating the life of his first victim were entirely unjustified and unprovoked. That is, entirely and severely wrongful.
>
> To the point that his actions in relation to the first victim were so severely wrong, resulted in the calculation over a sufficient amount of time, while he was sexually assaulting one victim to also terminate the life of the - - that second victim in order to cover up the wrong of the first murder following that sexual assault.
>
> The heinous nature of the acts relating to these victims represent an intentionality that transcends considerations of the characteristics of youth, particularly when it must be factored into the overall consideration that the Defendant labored over time to turn drowning the first victim after the attempt to also hang this person failed, to result in a final termination of his life.

These specific facts and circumstances clearly extend beyond the outer reaches of any question or proportionality and beyond any mitigating characteristics of youth.

In sum, the trial court adhered to its obligation to balance defendant's attributes of youth with the remaining *Snow* factors, and in doing so it handed down a sentence that was individualized to defendant and the circumstances of his crimes. There was no abuse of discretion.

## V. INEFFECTIVE ASSISTANCE

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). In order to prevail on an ineffective assistance of counsel argument, a defendant must show "that counsel's performance was deficient," and "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant argues that his attorney should have presented evidence and arguments pertaining to the *Miller* factors at his resentencing hearing in order to advocate for a mitigated sentence. See *People v Harris*, 185 Mich App 100, 105; 460 NW2d 239 (1990) (the failure of a defendant's attorney to advocate for the defendant at sentencing by not arguing "for mitigation of the sentence" can constitute deficient performance of counsel). According to defendant, his attorney should have hired an expert to provide information on the effects of defendant's youth at the time of the crime, as is standard in cases involving the possibility of capital sentencing for convictions of first-degree murder. However, the trial court was imposing a term-of-years sentence for second-degree murder, and defendant provides no offer of proof that any such expert testimony would have been favorable to him. Defendant's trial counsel twice unsuccessfully asked the trial court to specifically consider the *Miller* factors, and to order a psychological evaluation. For these reasons, defendant has not demonstrated that defense counsel's efforts to place the mitigating factors of youth before the trial court, though unsuccessful, constituted deficient performance.

## VI. ATTORNEY FEES

The trial court included a fee of $2,160 for attorney fees with defendant's new sentences. Defendant argues that attorney fees could not properly have been imposed at his 1976 sentencing, and therefore should not have been imposed with resentencing for the same crime. However, before the enactment of MCL 769.1k, sentencing courts were authorized to impose a fee for a court-appointed attorney as part of a sentence, as long as the record included a presentence "articulation" regarding the defendant's foreseeable ability to pay. *People v Jackson*, 483 Mich 271, 283; 769 NW2d 630 (2009). See also *People v Nowicki*, 213 Mich App 383, 387; 539 NW2d 590 (1995) ("[T]he ability of courts to require defendants to repay expenses of court-appointed

-11-

counsel has been recognized by the Michigan Supreme Court."). Regardless, defendant is appealing the result of his 2023 resentencing, rather than his 1976 original sentencing.

In 2005, the Legislature enacted MCL 769.1k[8] and MCL 769.1*l*, effective January 1, 2006, which "give Michigan trial courts the power to both impose a fee for a court-appointed attorney as part of a defendant's sentence and to enforce that imposition against an imprisoned defendant." *Jackson*, 483 Mich at 283. The imposition of this fee "is not limited by reference to a defendant's ability to pay." *Id*. Therefore, the trial court had the authority to impose attorney fees as a part of defendant's resentencing in 2023.[9]

Affirmed.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ James Robert Redford

---

[8] The version of MCL 769.1k applicable at the time of defendant's resentencing states, in pertinent part, as follows:

> (1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred by statute or sentencing is delayed by statute:
>
> * * *
>
> (b) The court may impose any or all of the following:
>
> * * *
>
> (*iv*) The expenses of providing legal assistance to the defendant.

[9] Because we are affirming defendant's sentences, there is no need to address any issues pertaining to a remand.